190 So.2d 152 (1966)
Frank A. GAMBINO
v.
William LUBEL.
William LUBEL
v.
Frank A. GAMBINO, Government Employees Ins. Co., City of New Orleans, the Travelers Ins. Co., and Maryland Casualty Co., in Solido.
Nos. 2221, 2247.
Court of Appeal of Louisiana, Fourth Circuit.
July 15, 1966.
Rehearings Denied October 5, 1966.
Writs Refused November 18, 1966.
*153 Steven R. Plotkin and Owen J. Bradley, New Orleans, for Frank A. Gambino, defendant, appellee.
Francis G. Weller, Deutsch, Kerrigan & Stiles, New Orleans, for Maryland Casualty Co., defendant, appellee, intervenor-appellant.
Herman & Herman, David L. Herman and A. I. Kleinfeldt, New Orleans, for William Lubel, plaintiff, appellant.
Jones, Walker, Waechter, Poitevent, Carrere & Denegre and Ashton Hardy, New Orleans, for Travelers Ins. Co., defendant-appellant.
Donald Hammett, Hammett, Leake & Hammett, New Orleans, for Government Employees Ins. Co., defendant-appellee.
John V. Baus and Ashton Hardy, New Orleans, for City of New Orleans, defendant-appellee.
Francis J. Mooney, Jr., New Orleans, for National Surety Corp., intervenor.
Before REGAN, CHASEZ, and BARNETTE, JJ.
CHASEZ, Judge.
These cases arose out of a single accident involving one automobile in which the driver, William Lubel, and a police officer, Frank A. Gambino, were both seriously injured. The accident occurred on South Claiborne Avenue, a major thoroughfare in the City of New Orleans, at a point where the avenue consists of two traffic lanes and a parking lane on each side of a very wide and very deep open drainage canal. The events immediately preceding the accident *154 which require our attention occurred in the outbound lanes directly across from the Sewerage and Water Board Plant between General Ogden and Eagle Streets, at about 7:00 P.M. on November 29, 1962.
The actual facts of the occurrence are not in great dispute; the ultimate conclusions to be drawn from those facts is of course the paramount issue.
William Lubel, an executive and part owner of the Excel Manufacturing Company, was returning to the City from a business trip, which had taken him to Covington, in a new Cadillac owned by the company. He had crossed the Lake Pontchartrain Causeway and continued on Causeway Boulevard to the Jefferson Highway, (which becomes Claiborne Avenue at the City limits). Mr. Lubel was a long-time diabetic and as he left the Causeway Bridge he realized that he was beginning to have an insulin reaction, to ward off which he had only to eat a candy bar or drink a coke, both of which he had in the back seat of the car. However, he did not stop as he felt that he could make it to his home on Octavia Street in uptown New Orleans without difficulty, and continued to drive toward the City. It seems that at some point on this drive he blacked out, for he has absolutely no recollection of anything after he left the Causeway. Apparently he drove down Jefferson Highway and into the City. For some unknown reason he turned his vehicle back toward Jefferson Parish on South Claiborne Avenue, in a direction away from his home. He brought it to a stop in the left hand traffic lane of the roadway outbound to Jefferson Parish, next to the open drainage canal, at a barricade placed there for construction work being performed in that lane, between General Ogden and Eagle Streets, on South Claiborne Avenue.
Several witnesses saw him slumped over the wheel of his car; this was reported to the New Orleans Police Department at 6:55 P.M. and the complaint was relayed by radio to a patrol car occupied by officers Frank A. Gambino and Lawrence Michel. These officers arrived minutes later, approached the car, and attempted to question Lubel to determine his condition. They were unable to elicit any intelligible information, but became aware of the fact that he was not intoxicated. Officer Gambino walked around the rear of the car and attempted to enter the passenger side of the front seat; on finding the door locked, he walked back around the rear of the vehicle, reached in through the driver's door, unlocked the back door on the driver's side, got in the car and reached over the seat and unlocked the front door on the passenger's side, walked back around the rear of the car and got into the right hand front seat. He pulled down the sun visor and looked through the glove compartment in an effort to determine Lubel's identification and the cause of his condition.
Mr. Lubel began to exhibit signs of returning consciousness and Officer Gambino inquired for his driver's license. The trial Judge relates the following:
"When Officer Gambino questioned Mr. Lubel concerning his driver's license, Mr. Lubel turned his head to the right, reached for something, uncrossed his legs and his right foot hit the accelerator. The car `shot forward'. (Mr. Armand Serpas testified that `he moved his leg and hit the accelerator'. Question'How fast did the car start?' Answer'It was to the floor'. Miss Joyce Musacchia testified that `Mr. Lubel uncrossed his legs and his feet hit the floor.' Mr. Henry Brokmier testified that when he said `Let me see your driver's license. I saw his leg move. The right leg. It was all one motion. When the car "shot forward" Officer Gambino was seated on the front seat, well over on the passenger's side, with his left arm on the back of the seat, leaning slightly forward * * *.'
* * * * *
"At 7:08 P.M. Police Headquarters received `Signal 30' `Officer needs assistance'.

*155 "(12 minutes had expired from the time that the original complaint had been received at Headquarters at 6:56 P.M.)"
The police officers were at the scene not more than six minutes before the occurrence of the accident.
These multiple claims and counter claims followed.
Mr. Lubel filed the first suit, No. 417,700, against (1) his own liability insurer, Maryland Casualty Company, alleging in effect that he was a guest passenger in his own vehicle and that Gambino was the negligent driver thereof; (2) Frank A. Gambino individually; (3) Government Employees Insurance Company, the insurer of Gambino's personal automobile; (4) the City of New Orleans as Gambino's employer; and (5) The Travelers Insurance Company, as liability insurer of the City.
Into this suit an intervention was filed against all defendants by the National Surety Corporation to recover workmen's compensation benefits paid to Mr. Lubel, and a third-party petition was filed by Travelers Insurance Company and the City of New Orleans against Maryland Casualty Company and Government Employees Insurance Company, alleging that one of these insurers was the primary insurer of Gambino and owed Travelers a defense against this suit, the cost of which they seek to recover, and further, that if they were liable at all, it is only vicariously and ask for recovery over against Gambino for any amount they may be found liable.
Mr. Gambino filed the second suit, No. 419,493, naming only Lubel as defendant. Into this suit an intervention was filed by Maryland Casualty Company, seeking to recover $3,850 from Gambino representing the amount paid out for damage to the Cadillac automobile.
All pleadings were answered and all issues were joined, after which the cases were consolidated for trial on the merits.
The trial court rendered judgments, in No. 419,493 in favor of Gambino against Lubel, in the sum of $27,672.65, and dismissing Maryland Casualty Company's intervention; and in No. 417,700 dismissing Lubel's suit as against all defendants therein, and further dismissing the intervention and the third-party demand filed therein.
William Lubel appealed in both cases, Maryland Casualty appealed in both cases, and also appealed the dismissal of its intervention in No. 419,493, and Travelers Insurance Company appealed the dismissal of its third-party demand for costs of its defense; Gambino answered the appeal and asked for an increase in his award.
A large part of this case concerned the coverage afforded by the various insurance policies involved, and much of the confusion resulting from the multiple parties and numerous demands in the case can be minimized, if it is kept in mind that the underlying issue is the negligence or lack thereof of Lubel and Gambino.
The trial court found Lubel was negligent, and we frankly believe that any argument that he was not negligent, under the facts as they appear in this case, is tenuous at best. Certainly Mr. Lubel was aware of an oncoming insulin reaction, certainly he did not suddenly, without warning, pass out, and certainly he had suffered numerous such reactions in the past. To ward off this reaction and resulting incapacity, he had only to stop and drink a coke, or eat a candy bar. He had both commodities easily accessible to him in the back seat of the car. Nor, in fact, does anyone in this case suggest that Mr. Lubel was free from negligence. The argument is made that his admitted negligence had come to rest when he stopped the vehicle in a so-called "zone of safety". Lubel's negligence was not simply his failure to eat his snack, endangering only himself; it was in his continued operation of his vehicle, knowing full well his oncoming condition, which operation imperiled all persons, and which risk of harm was grossly unreasonable. Lubel himself admits to having blacked out sometime before he ever reached *156 Jefferson Highway; he does not even recall a large part of the trip down Causeway Boulevard; his stopping the vehicle where he did does not seem to have been a conscious reaction, and if it was, why did he not stop it in a more likely position, rather than where he did, and why did he not take the car out of gear and turn off the engine? These are mechanical processes, as counsel argues, and we believe it was his omission to perform them that set the stage for the events to follow. If he was conscious when he stopped, why did he not do these things, and is he not at fault for not having done them? If he was not conscious at the time, then can it be said that he was not responsible when he continued to operate this vehicle knowing that this condition was coming on him? We do not believe that any negligence with which he may have been charged had come to rest under the facts of this case, and any other conclusion would have been, in our opinion, gross error.
Lubel had notice and knowledge of the existence of this physical impairment, he had notice and knowledge that it could and did come on and destroy his power to control an automobile, and he had notice and knowledge that such impairment was so affecting him at this time. Certainly it was negligence to "an extreme degree" for him to continue to operate the vehicle. Williams v. Frohock, 114 So.2d 221, (Fla.App. 1959); 28 A.L.R.2d 12, Sec. 15 et seq.; 5 Am.Jur., Autos and Highway Traffic, Sec. 223, pp. 365, 366.
An afflicted person is held to the standard of care of the ordinarily prudent man which the law has established for everybody. To attain this norm he may have to put forth a greater effort for his own safety, and the safety of others, than one not disabled. Darter v. Greenville Community Hotel Corporation, 301 F.2d 70 (4 Cir., 1962); Dillenschneider v. Campbell, Mo.App., 350 S.W.2d 260.
"* * * in a given situation it may indicate lack of due care for a person to drive on a public highway when he is suffering from a disease which he knows, or which a reasonable person should know, makes him subject to fainting or weak spells or seizures of a sort which may imperil his control of the vehicle." Kreis v. Owens, 38 N.J.Super. 148, 118 A.2d 420, 423.
We are reviewing the judgment of the court below, which found that Lubel was negligent and his negligence was a cause in fact of the accident, and is not entitled to recovery on his own behalf. We are in complete agreement with that finding.
The trial court did not, in his reasons, discuss the numerous ancillary claims as they were pretermitted when it was determined that Lubel was not entitled to recovery. Though this approach may appear to be cavalier, it is only so superficially, for what purpose would be served by such a determination?
Contributory negligence had been attributed to Gambino in the conduct of his investigation. It is alleged that he should have been aware that the vehicle was running and should have turned off the ignition and his failure in these respects constituted contributory negligence barring his recovery. Careful consideration of the authorities relied on by the court below, and those advanced by counsel for Gambino have led us finally to conclude that he was not. Certainly it was the officer's duty to investigate; he was not a volunteer rescuer which would seem to fit more the ordinary conception of a rescue situation, but simply because he was performing his duty would not remove him from being classified as a "rescuer." Nor was it shown that he had any special training or knowledge which would place him in the position of an expert, and for whom a more stringent duty would exist. True, he had 17 years experience on the force, but the only area in which he is alleged to have been at fault is in not being aware that the engine was running in the vehicle, and it does not appear to us that that experience would *157 give him any greater capability in determining this than any other individual who had normal contact with the occupancy and use of automobiles. The officers were on the scene only about six minutes, and Gambino was in the vehicle only a matter of a minute or two before it took off; these facts, coupled with the fact that the officers were aware that the man was sick rather than drunk, and that their attention was drawn primarily to aiding the man rather than to the machine, and that the vicinity was rather noisy due to heavy traffic at that time of day, leads us to believe that, in spite of the fact other witnesses testified that they were aware of the engine running, Officer Gambino was not unreasonable in not being so aware. The Court correctly concluded that Officer Gambino occupied the status of a "rescuer" and as such he cannot be said to have been contributorily negligent under the facts of this case. A rescuer is favored in the eyes of the law and is not chargeable with negligence merely because he failed to make the wisest choice to accomplish the purpose. The cause of an injury to a rescuer is the fault which created the peril to those whom he attempts to aid. Grigsby v. Coastal Marine Service of Texas, Inc., 235 F.Supp. 97 (D.C. 1964), Lynch v. Fisher, La.App., 34 So.2d 513, 41 So.2d 692; 38 Am.Jur. 29 Restatement of Torts, Section 435; Payne v. Georgetown Lumber Co., Ltd., 117 La. 983, 42 So. 475; Atkins v. Bush et al., 141 La. 180, 74 So. 897, L.R.A. 1917E 809.
With regard to Traveler's third party demand, it appears that all insurers in this case denied coverage and it does not appear that there was any determination of whether either policy covered Gambino, under the circumstances disclosed in this case, let alone who was the primary or secondary insurer. If any defense is owed by a primary insurer, it would seem it would be a defense on the merits, not on the question of coverage. In the case of Maryland Casualty Co. v. Marquette Casualty Co., La.App., 143 So.2d 249, cited by Travelers in support of its claim, there does not appear to have been any question that both policies involved afforded coverage. In any event there is no evidence in this record upon which the court could found an award for such claim.
Gambino's claim for an increase in the award to him is not well founded; the judgment awarded all special damages he suffered, and included a sum representing lost earnings from part time employment he was unable to perform during the period he was disabled. No claim for lost wages from his regular employment as a policeman was proper as he was kept on full pay the entire time. We believe that an award for future additional lost wages from this part-time employment is too speculative. The award of $25,000 for the injuries he sustained appears to be fair and adequate, and we will not disturb the assessment made by the trial judge.
For the foregoing reasons the judgment of the Court below is affirmed, all costs of this appeal to be borne by the respective appellants.
Affirmed.