ARMSTRONG, Judge.
Plaintiff, Raymond Spicuzza, appeals the trial court’s judgment granting defendants’ exception of NO CAUSE OF ACTION and dismissing plaintiff’s claim for damages in a personal injury cause of action. Defendant/Cross-Claim defendant, Last Warning Promotions (“Promotions”) appeals the trial court’s decision granting defendant/cross-claimant’s, St. Bernard Parish Police Jury's (“Police Jury”), motion for Summary Judgment based on indemnification provisions contained in the lease agreement entered into by the defendants.
On September 26, 1986, Promotions contacted Police Jury to lease the St. Bernard Civic Center for a concert on October 27, 1986. The lease agreement required Police Jury to furnish twenty uniformed security personnel at Promotions’ expense. Promotions assumed “full responsibility for the character, acts and conduct of all persons admitted to said premises.” Promotions also agreed “to have on hand at all times and at its own expense, a sufficient number of policemen for the regulation of traffic, maintenance of order, and protection of persons and property.”
During the concert, fighting broke out amongst the spectators prompting Civic Center Security to call the St. Bernard Parish Sheriff’s Department for assistance. Spicuzza, a deputy with the Sheriff’s Department, was dispatched along with other deputies in response to the call for assistance. While attempting to disperse the crowd Spicuzza was kicked by one of the concert patrons thereby sustaining injury to his left leg.
By his first assignment of error Spicuzza argues that the trial court erred in finding that the defendants owed no duty to him. Applying Louisiana law to the facts of this case the trial court concluded Spicuzza had no cause of action.
Under the law in Louisiana a duty-risk analysis is used to determine liability in tort causes of action. Generally a proprietor owes a duty to invitees to exer *274 cise reasonable care to protect them from injury. This duty includes calling the police when necessary. Ballew v. Southland Corp., 482 So.2d 890 (La.App. 2nd Cir. 1986). A proprietor who summons the police as part of the duty to exercise reasonable care to protect invitees does not then assume a further special duty to protect police officers from the actions of patrons on the premises. Holdsworth v. Renegades of Louisiana, Inc. 516 So.2d 1299 (La.App. 2nd Cir.1987).
Where the proprietor committed no affirmative acts of negligence resulting in injury to the professional rescuer or failed to inform the rescuer of the circumstances, no duty is owed. Holdsworth, supra. The courts of this state in employing a duty-risk analysis have continued to hold that a proprietor is not liable for injuries sustained by professional rescuers because they do not fall within the ambit of risk of the proprietor’s original negligence. Solis v. Civic Center Site Development Company, Inc., 385 So.2d 1229 (La.App. 4th Cir. 1980); Weaver v. O’Banion, 359 So.2d 706 (La.App. 1st Cir.1978).
Spicuzza relies heavily upon the case of Langlois v. Allied Chemical Corp., 258 La. 1067, 249 So.2d 133 (1971) to support his contention that professional rescuers do not assume the risk of all. injury without recourse against others. This case, however, can be distinguished on its facts.
Plaintiff, Langlois, was a fireman injured by inhaling poisonous gas that escaped from defendant’s premises while responding to a call for aid on adjacent premises. The Supreme Court reversed the Court of Appeal and reinstated the trial court’s judgment for the plaintiff.
This decision was based primarily on the determination that defendant chemical corporation was engaged in ultrahazardous activities and was thus held to a strict liability standard. Langlois’ duty as a fireman was to drive the fire truck and rescue those on adjacent premises. He never entered defendant’s premises. Thus he did not knowingly assume the risk from gas emissions any more than drivers of other vehicles near defendant’s premises. Lan-glois’ exposure in line with his duty as a fireman was heightened by the ultrahaz-ardous activity carried on by the defendant. In this rescue situation, the proprietor was held to have breached a duty to the professional rescuer.
Spicuzza, however, knowingly assumed the risk which caused him harm and this risk is necessarily included in his duty as a police officer. Spicuzza responded to a disturbance call where a large, boisterous crowd was attending a rock concert. Such calls are common place for police officers and Spicuzza accepted the risks involved with such duty when he became a police officer.
Finally, there is a strong policy reason for failing to find a special duty owing to professional rescuers. If such a duty were recognized by the courts, proprietors would be reluctant to summon police to their premises when needed because of fear of liability resulting from injury to the officers by third parties. Solis, supra. If police officers were allowed to recover in such situations, proprietors might choose to resort to self-help measures instead, creating additional risks to public safety. We find no error in the trial court’s determination that defendants did not owe a duty to Spicuzza to prevent injuries inflicted on him by a third party when summoned to their premises.
By his second assignment of error, Spi-euzza insists that the trial court denied him equal protection of the law under the Fourteenth Amendment by dismissing his cause of action because a non-professional rescuer would not be banned from recovery. Spicuzza argues in Louisiana there is no rational reason to distinguish between professional rescuers and non-professional rescuers.
Spicuzza is correct in referring to a rational basis for distinguishing between professional and non-professional rescuers. The equal protection clause mandates similar treatment of persons in similar situations. Arceneaux v. Treen, 671 F.2d 128 (5th Cir.1982). However, where a classification is urged, the Arceneaux case states, it is subject to one of two standards of *275 judicial scrutiny to determine whether it will pass constitutional muster.
It is hornbook law that equal protection analysis is traditionally made against the backdrop of two standards, strict scrutiny and minimum rationality. Strict scrutiny, requiring that the challenged statute further a compelling state interest is “strict” in theory and usually “fatal” in fact and “has been reserved for matters involving race, religion, national origin, and characterizations impinging upon ‘fundamental rights.’ ” Seoane v. Ortho Pharmaceuticals, Inc., 660 F.2d 146, 149 (5th Cir.1981). Rational basis scrutiny requires only that the legislative classification rationally promote a legitimate governmental objective.
Under the wide scope of discretion afforded states under this test, the constitutional safeguard is “offended only if the classification rests on grounds wholly irrelevant to the achievement of the state’s objective, (footnotes omitted) Arceneaux, 671 F.2d at 131.
Absent an allegation that a classification scheme burdens fundamental rights or creates suspect/quasi-suspect classifications, the challenged classification should be examined under the rational-basis standard. Application of the standard was described in Arceneaux as follows:
“In determining whether a challenged classification is rationally related to achievement of a legitimate state purpose, we must answer two questions: (1) does the challenged legislation have a legitimate purpose and (2) was it reasonable for lawmakers to believe that use of the challenged classification would promote that purpose?” Arceneaux, 671 F.2d at 133.
Although these standards are usually employed to scrutinize legislation, they are just as applicable to judicially fashioned law. Louisiana jurisprudence is clear that proprietors do not have a duty to protect professional rescuers from injury when summoned to their premises. The courts have articulated the reasons for this determination in several opinions. Holds-worth, supra; Solis, supra; and Weaver, supra. Namely that such protection is not within the ambit of risk of the proprietor’s original negligence and to find otherwise might make proprietors reluctant to summon professional rescuers when needed because of fear of liability resulting from injury. We find that there is no constitutional violation in treating the class of professional rescuers differently from non-professional rescuers. We find that the classification serves a legitimate purpose. It is reasonable for the courts to discourage proprietors from taking matters into their own hands and placing the safety of the public at risk.
By his third assignment of error, Spicuzza argues that he is entitled to recover because Promotions’ failure to hire more security personnel amounted to gross negligence for which liability does attach. The law does allow professional rescuers to recover from property owners when they are injured due to the property owners’ gross as opposed to ordinary negligence. Chinigo v. Geismar Marine, Inc., 512 So.2d 487 (La.App. 1st Cir.1987); Gambino v. Lubel, 190 So.2d 152 (La.App. 4th Cir.1966).
In Chinigo, supra, the plaintiff/police officer was overcome by toxic fumes while investigating a leak. The owners’ failure to place statutorily required placards on the truck designating what was inside amounted to gross negligence. In allowing the police officer to recover the court distinguished the conduct of the owner as extraordinarily negligent, thus taking it beyond the rule which bars recovery by professional rescuers for the ordinary negligence of a property owner.
The court in Gambino, supra, allowed a police officer to recover for injuries sustained while rescuing a diabetic who had collapsed while driving his car. The defendant was aware that an insulin reaction was beginning but continued driving nonetheless. This court stated that the “risk of harm was grossly unreasonable” and that it “certainly was negligence to an extreme degree for him to continue to operate the vehicle.”
*276 The facts of the instant case do not support a finding of gross negligence. Twenty uniformed security personnel were provided and the need for additional security only arose when a fight started and escalated into a small riot. Failure to anticipate this situation is not gross negligence. The defendants acted quickly and reasonably in contacting professionals to control the crowd and prevent injury to other spectators. Spicuzza’s injuries resulted from independent and intentional acts of third parties, not from any gross negligence on the part of defendants.
Finally, Promotions contends that the trial court erred in its interpretation of the lease agreement. Promotions insists that contracts of indemnification must be clear and unequivocal. Soverign Insurance Co. v. Texas Pipe Line Co., 488 So.2d 982 (La.1986); Straley v. Calongne Drayage and Storage, Inc., 350 So.2d 1231 (La.App. 4th Cir.1977); Rosales v. Dixie Mill Supply Co., Inc., 376 So.2d 179 (La.App. 4th Cir.1979). Promotions relies on language in the above cited cases to assert that unless an indemnification provision is expressed in writing it is not valid.
General rules which govern interpretation of other contracts apply in construing contracts of indemnity. Article 2045 of the Louisiana Civil Code provides that interpretation of a contract involves the determination of the common intent of the parties. Article 2046 further provides that when words of a contract are clear and explicit, no further interpretation may be made in search of the party’s intent.
Language in the lease agreement clearly stated that Promotions assumed “full responsibility for the character, acts and conduct of all persons admitted” to Police Jury’s premises. The agreement further required Promotions to obtain “a sufficient number of policemen for the maintenance of order and protection of persons and property.” The quoted language clearly represents the parties’ intention to shift responsibility for the actions of spectators to Promotions.
The fact that Promotions was required to provide Police Jury with proof of liability insurance further demonstrates its intent to assign liability to Promotions for the actions of spectators. Also the lease agreement contained the language that Promotions should hire a sufficient number of policemen at its own expense.
Spicuzza’s injury was the direct result of intentional acts of third parties. Responsibility for such behavior clearly rested with Promotions under the terms of the lease agreement. The trial court correctly interpreted the contract and held that Promotions agreed to indemnify Police Jury for damages thereunder.
For the foregoing reasons, the decision of the trial court is affirmed.
AFFIRMED.