696 So.2d 610 (1997)
Theresa D. MEUNIER
v.
Sara Trentacoste PIZZO, Soniat Realty, Inc., A.B. Insurance Co., and C.D. Insurance Co.
No. 97-CA-0047.
Court of Appeal of Louisiana, Fourth Circuit.
June 18, 1997.
*611 Raymond C. Burkart, Jr., New Orleans, for Plaintiff-Appellant Theresa D. Meunier.
Sidney D. Torres, III, Gregory J. Noto, Law Offices of Sidney D. Torres, III, Chalmette, for Defendant-Appellee Sara Trentacoste Pizzo.
Patricia A. Traina, Berrigan, Litchfield, Schonekas, & Mann, New Orleans, for Defendants-Appellees Soniat Realty, Inc. and Reliance Insurance Co.
Christopher E. Lawler, Joseph F. d'Aquin, III, Donovan & Lawler, P.C., Metairie, for Defendants-Appellees Sara Trentacoste Pizzo and Allstate Insurance Co.
WALTZER, Judge.
Plaintiff/appellant Theresa Meunier ("Plaintiff") filed this lawsuit against defendants/appellees Sara Trentacoste Pizza, Soniat Realty, Reliance Insurance Co., and Allstate Insurance Co. (collectively referred to as "Defendants"). Defendants filed a motion for summary judgment, alleging no liability to Plaintiff under the Professional Rescuer's Doctrine. After considering argument of counsel and reviewing the pleadings, the trial court granted Defendants' motion and dismissed this suit with prejudice. Plaintiff filed a devolutive appeal from this final judgment.

STATEMENT OF THE CASE
This lawsuit arises from a slip and fall accident. A few days before the accident, the Plaintiff, a New Orleans Police patrol officer, stopped at an abandoned and uninhabited home located in her patrol district at 1614 Esplanade Avenue in the Parish of Orleans. At the time, the home was owned by the defendant Sara Trentacoste Pizzo, and was for sale and/or lease through Soniat Realty. The Plaintiff spoke with a man who identified himself as John Gondolph, an employee of Soniat Realty. Mr. Gondolph was working outside of the home placing boards over the windows and performing general maintenance on the home. Mr. Gondolph asked the Plaintiff to walk through the home with him to check for trespassers, which they did on the first floor level only, and found no one. Mr. Gondolph then requested that the Plaintiff stop and inspect the property in the future, provided she was patrolling the area.
A few days later, on December 13, 1994, the Plaintiff was returning to the First District Station via Esplanade when she passed the property at issue. Remembering the conversation she had several days earlier with Mr. Gondolph, Plaintiff stopped to inspect the premises. Plaintiff entered the premises and proceeded to inspect the second floor level. While inspecting the second floor, Plaintiff encountered a vagrant climbing up behind her on the staircase. Plaintiff ordered the vagrant to stop, at which time the vagrant attempted to flee down the staircase. Plaintiff ran after the vagrant, grabbing *612 him midway down the staircase. During the struggle, Plaintiff allegedly tripped or slipped on an old beer can, lost her balance, and fell down the stairs. The vagrant fled and was never caught.
Shortly after Plaintiff's fall, another officer arrived at the home and took Plaintiff to the hospital. Plaintiff suffered a concussion, headache, injuries to her left shoulder and left leg, and low back pain. The Plaintiff continued to receive treatment following the accident, including surgery on her shoulder and over a year of physical therapy. The Plaintiff was unable to return to work for 13 months following the accident.

SPECIFICATION OF ERRORS
1. Whether the trial court correctly applied the Professional Rescuer's Doctrine, dismissing the police officer's claim for injuries she sustained in the course and scope of her employment.
2. Whether the Professional Rescuer's Doctrine violates the equal protection clause of the Fourteenth Amendment of the United States Constitution.

STANDARD OF REVIEW
Appellate courts must review summary judgments de novo. Appellate courts must ask the same questions as do the trial courts: whether any genuine issues of material fact exist, and whether the mover is entitled to judgment as a matter of law.
Procedurally, the court's first task on a motion for summary judgment is to determine whether the moving party's supporting documentspleadings, deposition, answers to interrogatories, admissions and affidavitsare sufficient to resolve all material factual issues. La.Code Civ.Pro. Art. 966(B). If the court finds that a genuine issue of material fact exists, summary judgment must be denied. Walker v. Kroop, 96-0618 (La. App. 4 Cir. 7/24/96), 678 So.2d 580, 584. If the court finds that the moving party established a prima facie case that no genuine issues of material fact exists, the party opposing the summary judgment must "make a showing sufficient to establish existence of proof of an element essential to his claim, action, or defense and on which he will bear the burden of proof at trial." La.Code Civ. Pro. Art. 966(C).
As previously explained by this Court, the 1996 amendments to La.Code Civ. Pro. Art. 966(C) do not change the existing law concerning genuine issues of material fact and burdens of proof applied to a summary judgment proceeding. See Walker, 678 So.2d at 584; Short v. Giffin, 96-0361 (La. App. 4 Cir. 8/21/96), 682 So.2d 249, writ denied, 689 So.2d 1372 (La.1997). However, the amendments do make a change in the law to the extent that it now proclaims that summary judgments are "favored" and thus the rules should be liberally applied, requiring courts to change their attitudes when reviewing motions for summary judgment from the attitudes required under the pre-amendment jurisprudence which proclaimed just the oppositethat summary judgments were not favored and thus should be strictly construed. The language of the amendment tracks the language of Federal Rule of Civil Procedure 56, and is designed to allow courts to decide whether enough evidence exists to go to trial, thus giving judges an opportunity to weed out meritless litigation.
1. ASSIGNMENT OF ERROR NO. 1: Whether the trial court correctly applied the Professional Rescuer's Doctrine, dismissing the police officer's claim for injuries she sustained in the course and scope of her employment.
The trial court correctly found that the Professional Rescuer's Doctrine barred recovery by Plaintiff, a police officer, for injuries she sustained during the performance of her professional duties. Defendants' documents supporting their motion for summary judgment sufficiently resolved all material factual issues, affording them the right for summary judgment as a matter of law under the Professional Rescuer's Doctrine.
Having established a prima facia case in favor of summary judgment, Plaintiff was required to establish proof of an element essential to her claim, action, or defense, which Plaintiff failed to do. Specifically Plaintiff failed to establish: (1) that defendants acted with gross or wanton negligence, *613 or (2) that her injuries resulted from a risk independent of the emergency or problem she assumed the duty to remedy.

A. The Professional Rescuer's Doctrine

The Professional Rescuer's Doctrine provides that a professional rescuer injured in the performance of his or her professional duties assumes the risk of such injury and is not entitled to damages from a third party. While this doctrine, arising out of an assumption of risk rationale, is the general rule, Louisiana courts have recognized two exceptions. First, a professional rescuer may recover for injuries caused by the defendant's gross or wanton negligence. Second, a professional rescuer may recover for injuries caused by a risk independent of the emergency or problem the professional rescuer assumed the duty to remedy. Spicuzza v. Fonseca, 537 So.2d 272 (La.App. 4 Cir.1988); Chinigo v. Geismar Marine, Inc., 512 So.2d 487, 490 (La.App. 1 Cir.1987), writ denied, 514 So.2d 457 (La.1987) (citing Langlois v. Allied Chemical Corp., 258 La. 1067, 249 So.2d 133 (1971)).

B. The record presented ample evidence that Plaintiff was acting in her professional capacity and that Plaintiff knowingly assumed the risk which caused her harm: a risk necessarily included in her duty as a police officer.

Plaintiff does not contest that at the time of the accident, Plaintiff was on duty as a patrol officer. In fact, Plaintiff admits that all of her medical bills resulting from the accident were paid by her employer, and that she received workmen's compensation benefits while out of work recovering from the accident. Additionally Plaintiff admits, as set forth in her appellate brief that "she saw it as her duty to oust any trespassers she may encounter inside the abandoned home, and she assumed the risk associated with such a duty." Because no issue exists that Plaintiff was working as a professional rescuer when the accident occurred, the only issue before the trial court was whether the facts of this case indicate that the Plaintiff fits within the exceptions to the Professional Rescuer's Doctrine.

C. Plaintiff failed to establish that Defendants acted with gross or wanton negligence.

The first recognized exception to the Professional Rescuer's Doctrine is gross or wanton negligence on the part of the defendant. Sayes v. Pilgrim Manor Nursing Home, Inc., 536 So.2d 705, 711 (La.App. 3 Cir.1988). Plaintiff invokes this exception, arguing that Defendants failed to warn her as to "the extensive history of criminal activity in the abandoned home." Plaintiff contends that while Mr. Gondolph informed her that he suspected trespassers on the premises, and asked her to inspect the home, he did not inform her of the more serious criminal activity for which the home had been the setting for months prior to Plaintiff's accident. Plaintiff asserts that if she had been informed of the extensive criminal activity previously reported, she could have taken preventive measures. Plaintiff contends that her lack of information placed her at a higher risk than she assumed, and that although she assumed the duty to check for trespassers, she did not assume the "higher risk of a violent criminal engaging in illegal drug activity."
Contrary to Plaintiff's argument, the evidence in the record does not establish "an extensive history of criminal activity at the abandoned home," nor "a higher risk of a violent criminal engaging in illegal drug activity." Pursuant to the New Orleans Police Department's records regarding the complaint history of the property at issue, which Plaintiff attached as Exhibit "D" to her memorandum in opposition to motion for summary judgment, only two complaints were filed prior to Plaintiff's accident. Although Plaintiff attaches five other incidents of criminal activity at the residence, all five incidents occurred after Plaintiff's accident. Plaintiff grossly exaggerated and embellished the criminal activity at this property.
Similarly, the record contains no evidence that the trespasser Plaintiff occasioned in the abandoned home was a violent criminal engaging in an illegal drug activity. The trespasser was never apprehended or identified and remains an unknown male subject. Additionally, *614 Plaintiff provides no testimony that she witnessed the trespasser engage in any kind of violent criminal activity or illegal drug activity.
As this Court set forth in Spicuzza, a proprietor owes a duty to invitees to exercise reasonable care to protect them from injury. This duty includes calling the police when necessary. Spicuzza, supra; Holdsworth v. Renegades of Louisiana, Inc., 516 So.2d 1299 (La.App. 2 Cir.1987), writ denied, 519 So.2d 126 (La.1988); Ballew v. Southland Corp., 482 So.2d 890 (La.App. 2 Cir. 1986). A proprietor who summons the police as part of the duty to exercise reasonable care to protect invitees does not then assume a further special duty to protect police officers from the actions of patrons on the premises. Where the proprietor committed no affirmative acts of negligence resulting in injury to the professional rescuer or failed to inform the rescuer of the circumstances, no duty is owed. Holdsworth, supra.
The courts of this state in employing a duty-risk analysis have continued to hold that a proprietor is not liable for injuries sustained by professional rescuers because they do not fall within the ambit of risk of the proprietor's original negligence. Solis v. Civic Center Site Development Company, Inc., 385 So.2d 1229 (La.App. 4 Cir.1980), writ refused, 390 So.2d 1343 (La.1980); Weaver v. O'Banion, 359 So.2d 706 (La.App. 1 Cir.1978), writ denied, 360 So.2d 1349 (La. 1978). Because the record is devoid of any evidence indicating that the Defendants were guilty of gross and/or wanton negligence, this exception to the Professional Rescuer's Doctrine is meritless.

D. Plaintiff failed to establish that her injuries resulted from a risk independent of the emergency or problem she assumed the duty to remedy.

A second recognized exception to the Professional Rescuer's Doctrine is the existence of an independent risk, separate from the risk that the professional rescuer assumed, which caused the rescuer's injuries. Chinigo v. Geismar Marine, Inc., 512 So.2d 487 (La.App. 1 Cir.1987), writ denied, 514 So.2d 457 (La.1987). Relying heavily on Chinigo, Plaintiff invokes this exception, contending that although she assumed the risks associated with her duty to search for and oust any trespassers she encountered inside the abandoned home, she did not assume the extraordinary risk that she would slip on debris while inside the home. In particular, Plaintiff contends that the debris on the floor of the premises created a "defect" which constituted an unreasonable risk of harm that falls outside the ambit of the Professional Rescuer's bar from recovery.
We disagree. Plaintiff's struggle with the trespasser, which caused her injuries, was not an independent risk, but a risk that was within her duty as a patrol officer. As stated above, the evidence, including Plaintiff's deposition testimony, establishes that Plaintiff's injuries were caused by the physical struggle with the trespasser; not the presence of the beer can on the stairs. However, assuming that the fall was caused by the presence of the beer can, this does not constitute the type of extraordinary risk contemplated in Chinigo. Rather, in Chinigo, the risk that the court classified as extraordinary was an unmarked truck containing hazardous chemical materials. The plaintiff/police officer was overcome by toxic fumes while investigating a leak. The owners' failure to place statutorily required placards on the truck designating what was inside amounted to gross negligence. In allowing the police officer to recover, the court distinguished the conduct of the owner as extraordinarily negligent, thus taking it beyond the rule which bars recovery by professional rescuers for the ordinary negligence of a property owner. Chinigo, 512 So.2d at 491. The presence of debris on the floor of a vacant building cannot be compared to the reckless and affirmative negligence found in Chinigo. Accordingly, we find this exception to the Professional Rescuer's Doctrine inapplicable.

E. Public policy supports the application of the Professional Rescuer's Doctrine to this case.

Finally, there is a strong policy reason for failing to find a special duty owing to professional rescuers. If such a duty were recognized *615 by the courts, proprietors would be reluctant to summon police to their premises when needed because of fear of liability resulting from injury to the officers by third parties. If police officers were allowed to recover in such situations, proprietors might choose to resort to self-help measures instead, creating additional risks to public safety. We find no error in the trial court's determination that defendants did not owe a duty to Plaintiff to prevent injuries sustained during the course and scope of the Plaintiff's professional duties.
2. ASSIGNMENT OF ERROR NO. 2: Whether the Professional Rescuer's Doctrine violates the equal protection clause of the Fourteenth Amendment of the United States Constitution.
By her second assignment of error, Plaintiff contends that the trial court denied her equal protection of the law under the Fourteenth Amendment by dismissing her cause of action because a non-professional rescuer would not be banned from recovery. Plaintiff argues that in Louisiana there is no rational reason to distinguish between professional rescuers and non-professional rescuers.
Plaintiff is correct in referring to a rational basis for distinguishing between professional and non-professional rescuers. The equal protection clause mandates similar treatment of persons in similar situations. Arceneaux v. Treen, 671 F.2d 128 (5th Cir. 1982). However, where a classification is urged, the Arceneaux case states, it is subject to one of two standards of judicial scrutiny to determine whether it will pass constitutional muster; strict scrutiny and minimum rationality. Strict scrutiny, requiring that the challenged statute further a compelling state interest is "strict" in theory and usually "fatal" in fact and "has been reserved for matters involving race, religion, national origin, and characterizations impinging upon `fundamental rights.'" Seoane v. Ortho Pharmaceuticals, Inc., 660 F.2d 146, 149 (5th Cir.1981). Rational basis scrutiny requires only that the legislative classification rationally promote a legitimate governmental objective.
Under the wide scope of discretion afforded states under this test, the constitutional safeguard is "offended only if the classification rests on grounds wholly irrelevant to the achievement of the state's objective." Arceneaux, 671 F.2d at 131. Absent an allegation that a classification scheme burdens fundamental rights or creates suspect/quasi-suspect classifications, the challenged classification should be examined under the rational-basis standard. Application of the standard was described in Arceneaux as follows: "In determining whether a challenged classification is rationally related to achievement of a legitimate state purpose, we must answer two questions: (1) does the challenged legislation have a legitimate purpose and (2) was it reasonable for lawmakers to believe that use of the challenged classification would promote that purpose?" Arceneaux, 671 F.2d at 133.
Although these standards are usually employed to scrutinize legislation, they are just as applicable to judicially fashioned law. Louisiana jurisprudence is clear that proprietors do not have a duty to protect professional rescuers from injury when summoned to their premises. The courts have articulated the reasons for this determination in several opinions. Holdsworth, supra; Solis, supra; and Weaver, supra. Namely that such protection is not within the ambit of risk of the proprietor's original negligence and to find otherwise might make proprietors reluctant to summon professional rescuers when needed because of fear of liability resulting from injury. We find that there is no constitutional violation in treating the class of professional rescuers differently from non-professional rescuers. We find that the classification serves a legitimate purpose. It is reasonable for the courts to discourage proprietors from taking matters into their own hands and placing the safety of the public at risk.

CONCLUSION
We affirm the trial court's summary judgment. Plaintiff, a police officer, suffered injuries in the course and scope of her employment *616 as a policewoman and during the performance of her professional duties. The courts of this state, in employing a duty-risk analysis, have consistently held that a proprietor is not liable for injuries sustained by a professional rescuer, absent gross negligence or an independent risk not typically assumed by a rescuer. The risk encountered by Plaintiff was not so extraordinary to present a special risk, independent of the risk Plaintiff assumed in performing her duty. Accordingly, the Professional Rescuer's Doctrine bars Plaintiff's recovery in this case.
AFFIRMED.