722 So.2d 1057 (1998)
Chris BELL
v.
Janet WHITTEN, Peter Brown, Peter Brown, Jr. and XYZ Insurance Company (State Farm).
No. 97 CA 2359.
Court of Appeal of Louisiana, First Circuit.
November 6, 1998.
*1059 Charles N. Branton, Slidell, for plaintiff/appellant Chris Bell.
William H. Voigt, New Orleans, for defendants/appellees Janet Whitten and State Farm Fire And Casualty Company.
Before SHORTESS, C.J., and CARTER and WHIPPLE, JJ.
WHIPPLE, Judge.
This is an appeal by plaintiff from a judgment in conformity with the jury's verdict, in which plaintiff was awarded damages against one defendant, but plaintiff's claims against the remaining defendants were dismissed. For the following reasons, we affirm.

FACTS AND PROCEDURAL HISTORY
In late December of 1992, Janice Whitten and her husband had to leave Louisiana to attend a family funeral in Alabama. Ms. Whitten's seventeen-year-old son, James Stowe, III, was living with her at the time and was employed at Schwegmann's Supermarket. Because he was scheduled to work that week, Ms. Whitten decided to leave him home alone for the first time.
On the evening of December 26, 1992, while the Whittens were out of town, James had someone purchase Budweiser beer and Cisco for him at the end of his work shift at Schwegmann's. James then invited several teenagers to his mother's house, including Peter Brown, Jr. ("Peter"), whom James did not know very well.
A group of approximately seven teenagers arrived at James' house at approximately 11:45 p.m. or midnight. Upon arriving at home, James placed the Budweiser beer and the Cisco in the refrigerator in the garage and told the others, "[i]f you want one, it's in the refrigerator." The minors then drank alcohol and listened to music at James' house.
At some point that night, Peter became argumentative and got into an argument with a boy named Jonathon, which resulted in "a punch [being] thrown." James told Peter to "step outside" because he did not want Peter fighting in the house. Peter, Jonathon and Peter's friend, Jamie Taylor, all went outside.
At about that time, the Whittens' next door neighbor, Edward Buelle, Jr., noticed kids out in the yard. Buelle went out into the yard to investigate and noticed one boy on the median of the street who "was wanting to fight everybody." Knowing that the Whittens had left James home alone, Buelle told his wife to call the police. Buelle remained outdoors until the police arrived, and when the police unit turned down the street, Peter and Jamie Taylor ran across a vacant lot to the next street.
The officers who first arrived on the scene were Lieutenants Donald Sharp and Nancy Dean of the St. Tammany Parish Sheriff's Office. They arrived at the Whitten residence at 2:47 a.m., at which time they were informed by Buelle that two young men who had been involved in an altercation had run over to the next street. Sharp and Dean proceeded to the next street where they encountered Peter and Jamie Taylor. When Lt. Sharp attempted to question Peter, Peter became very combative, and a struggle between the two ensued.
During that time, Deputy Chris Bell arrived at the scene. Deputy Bell observed the struggle between Lt. Sharp and Peter, and Bell went over to assist Sharp. Lt. Sharp was able to get Peter to the back of his unit, and he then told Peter to place his hands on the car. Deputy Bell offered to cuff Peter, so Lt. Sharp stepped back. At that point, Peter pushed off of the police unit with his feet and began kicking and screaming. Bell fell to the ground while holding Peter, and Bell heard a "snap." Because he was in great pain, Bell was unable to continue to assist Lt. Sharp in subduing Peter. Thus, he rolled out of the way so the other officers could handcuff Peter.
Eventually, Deputy Bell limped over to his unit and drove himself to the hospital. Bell sustained a fracture to the left ankle, which required surgery to close the fracture and set it with surgical screws and a plate. Bell later underwent a second surgery to have the plate and screws removed.
Bell filed suit against Peter; Peter's father, Peter Brown, Sr.; James' mother, Janice *1060 Whitten; and her homeowner's insurer, State Farm Fire and Casualty Insurance Company ("State Farm").[1] Preliminary judgments by default were taken against Peter Brown, Jr. and Peter Brown, Sr., and neither appeared at or participated in the trial.
Following trial, the jury returned a verdict, finding that James did not owe a duty to Deputy Bell under the facts of this case and that Peter Brown, Jr. was 100% at fault in causing the injuries to Deputy Bell. Judgment was rendered in accordance with the jury's verdict, in favor of Bell and against Peter Brown, Sr. in the amount of $82,565.95.[2] The judgment further provided that Bell's claims against Whitten and State Farm were dismissed with prejudice.
From this judgment, plaintiff appeals, averring that: (1) the jury was clearly wrong in finding that Janice Whitten and State Farm were not responsible for plaintiff's injuries; (2) the jury instructions were misleading and not in accordance with the law; (3) the jury clearly erred in not finding Janice Whitten responsible for the actions of her minor child in accordance with LSA-C.C. art. 2318; and (4) the trial court erred in denying plaintiff's motion in limine.

PLAINTIFF'S MOTION IN LIMINE

(Assignment of Error No. 4)
Plaintiff contends that the trial court erred in denying his motion in limine to exclude the psychiatric records of Peter Brown, Jr. Plaintiff's theory of liability as to Janice Whitten was that James' actions in supplying alcohol to Peter caused Peter to react as he did when approached by the police, thereby establishing fault on the part of James and, consequently, his mother. To rebut this evidence, defendants planned to introduce the psychiatric records of Peter, establishing that Peter was admitted by his father to Southeast Louisiana Hospital on the night of the incident, where he was diagnosed with "intermittent explosive disorder" and "conduct disorder, solitary aggressive."
Plaintiff filed a motion in limine, arguing that the evidence should be excluded under LSA-C.E. art. 404(A), which provides that evidence of a character trait is not admissible for the purpose of proving that the person acted in conformity with that trait on a particular occasion. The trial court ruled that it would allow the medical records, but excluded all portions of the records which referred to prior bad acts. At trial, the medical records were introduced, and plaintiff again objected on the basis that the evidence was prohibited by LSA-C.E. art. 404.
Code of Evidence article 404(A) provides, in pertinent part, as follows:
Evidence of a person's character or a trait of his character, such as a moral quality, is not admissible for the purpose of proving that he acted in conformity therewith on a particular occasion....
Because the view is that character evidence has only minimal value to prove conduct of a particular person on a particular occasion, and there are substantial risks in its use, this article greatly limits its admissibility for the purpose of proving actions in conformity therewith. Pugh, Force, Rault & Triche, Handbook on Louisiana Evidence Law, 305 (1998). However, the issue presented in this case is whether evidence of a psychiatric disorder or diagnosis of a psychiatric condition is included in the terms "character" or "trait of ... character" within the meaning of this article.
In State v. Eishtadt, 531 So.2d 1133, 1135 (La.App. 4th Cir.1988), the defendant sought to introduce mental health records of the victim to demonstrate the victim's dangerous and violent character and, thereby, impeach his credibility. The Fourth Circuit held that mental health records demonstrating dangerous and violent propensities are not evidence affecting one's credibility and would not be admissible for impeachment purposes. Additionally, *1061 the court noted that the victim's mental health was not an issue in the case. Eishtadt, 531 So.2d at 1135. See also State v. Carson, 598 So.2d 576, 581 (La.App. 4th Cir.), writ denied, 605 So.2d 1088 (La.1992); State v. Baker, 582 So.2d 1320, 1327 (La.App. 4th Cir.1991), writ denied, 590 So.2d 1197(La.), cert. denied, 506 U.S. 818, 113 S.Ct. 62, 121 L.Ed.2d 30 (1992); and State v. Davis, 562 So.2d 1173, 1176 (La.App. 4th Cir.1990).
However, in the instant case, the records were not introduced for the purpose of attacking credibility. Rather, the defense sought to establish that Peter's actions were consistent with a diagnosed mental disorder, i.e., intermittent explosive disorder, or that this mental disorder rather than the alcohol affected his actions.
"Character" has been defined as a person's disposition or disposition in respect to a general trait, "such as honesty, temperance or peacefulness." McCormick on Evidence § 195 (1992). However, insanity or other medically diagnosed ailments are not generally thought of as character traits. Charles A. Wright and Kenneth W. Graham Jr., Federal Practice and Procedure § 5233 (1978 & Supp.1998).[3]
We conclude that introduction of evidence of Peter's diagnosed mental condition, such as "intermittent explosive disorder" or "conduct disorder, solitary aggressive," was not an attempt to introduce evidence of a character trait and therefore, is not excluded by LSA-C.E. art. 404(A). Plaintiff attempted to establish that Peter acted in an aberrational state due to alcohol, and Peter's medical records were properly introduced to allow defendants to establish that Peter acted in an aberrational state due to a diagnosed mental condition. Therefore, we find that this assignment of error lacks merit.

JURY INSTRUCTIONS

(Assignment of Error No. 2)
In charging the jury, the trial court gave the following instruction:
You should understand that the percentages of fault which you assign will affect the ultimate recovery in this case and who will pay it. Generally speaking, each defendant will only pay that portion of plaintiff's damage which corresponds to the percentage of fault which you have assigned to that defendant. The plaintiff's own recovery will be reduced by the percentage of fault that you assign to him.
You should also understand that if a defendant's percentage of fault is greater than the plaintiff, but it is less than fifty percent, then that defendant may have to pay fifty percent of the damages recovered by the plaintiff.
At the jury charge conference, plaintiff objected to the second paragraph of this jury charge on the ground that it could have "a chilling effect on jury members and dissuade them from giving their honest opinions after hearing the evidence and facts." The court overruled the objection. Plaintiff now complains of this ruling on appeal.
In a jury trial, the judge is obligated to give instructions which properly reflect the law applicable in light of the pleadings and facts in each case. Adequate jury instructions are those instructions which fairly and reasonably point out the issues presented by the pleadings and evidence and which provide correct principles of law for the jury to apply to those issues. Haydel v. Hercules Transport, Inc., 94-1246, p. 17 (La.App. 1st Cir. 4/7/95); 654 So.2d 418, 429, writ denied, 95-1172 (La.6/23/95); 656 So.2d 1019.
An appellate court must exercise great restraint before overturning a jury verdict on the suggestion that the jury instructions were so erroneous as to be prejudicial. Haydel, 94-1246 at p. 17; 654 So.2d at 429. Moreover, the adequacy of the jury instructions must be determined in light of the instructions as a whole. Theriot v. Bourg, 96-0466, p. 7 (La.App. 1st Cir.2/14/97); 691 So.2d 213, 220, writ denied, 97-1151 (La.6/30/97); 696 So.2d 1008.
At the time of the incident in question, December 27, 1992, the law on comparative *1062 fault and solidarity indeed provided that where a defendant was less than fifty percent at fault, but was more at fault than the plaintiff, the plaintiff could collect fifty percent of his damages from that defendant. LSA-C.C. arts. 2323 and 2324 (prior to amendment by Acts 1996,1st Ex.Sess., No. 3, § 1, eff. April 16, 1996). Thus, the issue presented is whether a jury instruction which correctly stated the law and which was relevant to the issues presented was nonetheless so prejudicial as to warrant overturning the jury verdict.
While not contending that this instruction was an incorrect statement of the law, plaintiff contends that regarding jury instructions on allocation of fault, the additional wording regarding who will pay for the damages was unnecessary. Additionally, plaintiff argues that such an instruction takes away the jury's ability to fairly and impartially allocate fault, because the jury would be faced with the knowledge that one slightly at fault may have to pay half of the damages.
While this instruction was arguably unnecessary in that it was not essential to the jury's resolution of the issues of fault and apportionment of fault, the instruction was undisputedly a correct statement of law relevant to this case. Moreover, in reviewing the jury instructions as a whole, we are unable to say that the inclusion of this instruction was so prejudicial as to prevent the jury from fairly and impartially performing its task in deciding the issues presented to it. Thus, we conclude that this assignment of error is likewise without merit.

FAULT OF JAMES STOWE AND CORRESPONDING LIABILITY OF JANICE WHITTEN

(Assignment of Error Nos. 1 and 3)
In these assignments of error, plaintiff contends that the jury committed manifest error in finding no fault on the part of James in causing plaintiff's injuries and, consequently no liability on the part of his mother, Janice Whitten, and her homeowner's insurer, State Farm. In answering the jury interrogatories, the jury found that under the facts of this case, James did not owe a duty to Deputy Bell. Thus, there was no finding of fault on the part of James.
"Duty" is defined as an obligation, to which the law will give recognition and effect, to conform to a particular standard of conduct toward another. Gresham v. Davenport, 537 So.2d 1144, 1147 (La.1989) (citing Prosser and Keeton on the Law of Torts (5th ed.1984)). The imposition of a duty depends on a case-by-case analysis. Gresham, 537 So.2d at 1147.
In Gresham, the Louisiana Supreme Court addressed the duty of a minor host where the minor provided alcohol to another minor and the minor to whom the alcohol was given subsequently caused a single vehicle accident as a guest passenger in the vehicle. Regarding the existence of a statutory duty, the Court noted that LSA-R.S. 14:91.2 and 14:91.3 (now repealed) prohibit a minor from purchasing alcohol.[4] However, the court held that this statutory prohibition against purchasing alcohol did not address the situation where a minor gave the alcohol to another minor. Gresham, 537 So.2d at 1147. Thus, the Court concluded, there was no statutory duty on the part of a minor not to provide another minor with alcoholic beverages.
Additionally, the Supreme Court in Gresham found no duty imposed upon the minor under the specific facts presented therein. The Court noted that the situation involved a fifteen-year-old teenager who provided beer to her sixteen-year-old boyfriend. Additionally, neither teenager was a novice to beer drinking, having both been drinking beer occasionally on the weekends for about one *1063 year. Thus, the Court concluded that under the circumstances of the case, it was "doubtful" that the fifteen-year-old had a duty not to serve beer to the sixteen-year-old.[5]Gresham, 537 So.2d at 1147.
Revised Statutes 14:91.1 and 14:91.2 were amended subsequent to the facts giving rise to the Gresham decision to further prohibit a minor from possessing any alcoholic beverage.[6] Thus, at the time of the incident in question, LSA-R.S. 14:91.1 and 14:91.2 prohibited minors from purchasing or possessing alcohol.
In Hopkins v. Sovereign Fire & Casualty Insurance Company, 626 So.2d 880, 887-888 (La.App. 3rd Cir.1993), writs denied, 94-0154, 93-2958 (La.3/11/94); 634 So.2d 390, 402, the Third Circuit Court of Appeal addressed the issue of whether this statutory prohibition against purchasing or possessing alcohol imposed a duty upon minors not to share the alcohol with their minor friends. The court concluded that the statute did not impose such a duty, finding no logical reason for extending the reach of a minor's duty to third persons only on the basis of the added prohibition against possessing alcohol. Hopkins, 626 So.2d at 887.
The court reasoned that the legislature did not amend the statute to legislatively overrule Gresham. Rather, the amendment was offered solely to comport with the National Minimum Drinking Age Act, 23 U.S.C. § 158. The court explained that had our legislature refused to pass the cited amendments, its failure to do so would have cost the state badly needed federal transportation revenue. Hopkins, 626 So.2d at 887-888.
On review, we agree with the Third Circuit that these statutes, R.S. 14:91.1 and 14:91.2, which prohibit purchasing and possessing alcohol, should not be extended to impose a duty upon one minor not to give alcohol to another. Thus, we conclude that James had no statutory duty not to share the alcohol he obtained with Peter.
Moreover, turning to whether a duty arose from the particular circumstances of this case, we initially note that any duty on the part of James toward Deputy Bell, if one may be found to exist, would be limited by the "professional rescuer's rule." Essentially, this rule provides that professional rescuers, such as firemen and police officers, injured in the performance of their professional duties "assume the risk" of such injuries and are not entitled to damages, with certain limited exceptions. Mullins v. State Farm Fire and Casualty Co., 96-0629, p. 3 (La.App. 1st Cir. 6/27/97); 697 So.2d 750, 752; Meunier v. Pizzo, 97-0047, p. 4 (La.App. 4th Cir.6/18/97); 696 So.2d 610, 613, writ denied, 97-1891 (La.10/31/97); 703 So.2d 27. First, a professional rescuer may recover for injuries caused by a risk independent of the emergency or problem the professional rescuer assumed the duty to remedy, ie., if the riskgenerating object could pose the risk to the rescuer in the absence of the emergency or specific problem undertaken. Mullins, 96-0629 at pp. 3-4; 697 So.2d at 752.
On the other hand, where the risk involved is a "dependent" risk, i.e., arising from the very emergency that the professional rescuer was hired to remedy, the rescuer may only recover for injuries when (1) the dependent risks encountered by the professional rescuer are so extraordinary that it cannot be said that the parties intended the rescuers to assume them, or (2) the conduct of the defendant is so blameworthy that tort recovery should be imposed for the purposes of punishment or deterrence. Mullins, 96-0629 at p. 4; 697 So.2d at 752-753. Such conduct would include a defendant's gross negligence. Mullins, 96-0629 at p. 6; 697 So.2d at 754; Meunier, 97-0047 at p. 4; 696 So.2d at 613.
*1064 As noted by the Second Circuit, while the professional rescuer's rule has traditionally been discussed in terms of assumption of risk, under current Louisiana tort theory, the rule should perhaps be discussed in terms of comparative fault or duty/risk. Worley v. Winston, 550 So.2d 694, 697 (La.App. 2nd Cir.), writ denied, 551 So.2d 1342 (La.1989). More precisely, the rule comes into play in determining the risks included within the scope of the defendant's duty and to whom the duty is owed. A defendant's ordinary negligence or breach of duty would not encompass the risk of injury to a police officer responding in the line of duty to a situation created by such negligence or breach of duty. On the other hand, a defendant's particularly blameworthy conduct, such as intentional conduct or gross negligence, could be said to encompass the risk of injury to a policeman responding in the line of duty. See Worley, 550 So.2d at 697.
Considering the foregoing, in light of the record before us, we find no error in the jury's determination that James did not owe a duty to Deputy Bell under the facts of this case. As with the minor to whom alcohol was given in Gresham, the record herein reflects that Peter Brown, Jr. was not a novice to drinking. Jamie Taylor testified that there had been times before the incident in question when he and Peter had gone out and consumed alcoholic beverages. Additionally, Jamie testified that on the night in question, Peter had drunk "a couple beers" in the two hours right before they went to James' house. Most importantly, the record further establishes that Peter himself brought alcohol, a bottle of wine, to James' house and drank the wine in addition to the beer and Cisco offered by James. Under these circumstances, we find that the record amply supports the jury's determination that James did not have a duty not to offer alcohol to Peter. See Gresham, 537 So.2d at 1147.
Moreover, even assuming that such a duty could be established and that James breached that duty, we would nonetheless conclude that such ordinary negligence on the part of James, which could not be considered to rise to the level of gross negligence, would not encompass the risk of injury to Deputy Bell responding in the line of duty to a situation so remotely connected to such initial negligence. See Gresham, 537 So.2d at 1147-1148; see also Worley, 550 So.2d at 697. While we are cognizant of the plight of the police officer herein, we are bound to follow existing law and jurisprudence.
Thus, these assignments of error also lack merit.

CONCLUSION
For the above and foregoing reasons, the April 29, 1997 judgment of the trial court is affirmed. Costs of this appeal are assessed against plaintiff, Chris Bell.
AFFIRMED.
NOTES
[1] Initially, James was also named as a defendant, along with an individual named James P. Goff. However, on motion of plaintiff, these two defendants were subsequently dismissed from the suit without prejudice.
[2] Although Peter Brown, Jr. was also named as a defendant, judgment was only rendered against Peter Brown, Sr. However, plaintiff has not challenged this aspect of the judgment.
[3] Louisiana Code of Evidence article 404(A) generally follows the provisions of its federal counterpart, Federal Rule of Evidence 404(A). See LSA-C.E. art. 404 (Comment (a)).
[4] At the time of the accident in Gresham, LSA-14:91.2 provided, in pertinent part, as follows:

It is unlawful for any person under the age of 17 to purchase any alcoholic beverage either of high or low alcoholic content. (Emphasis added).
Revised Statute 14:91.1 provided a similar prohibition for persons over the age of seventeen and the age of eighteen. Also, at that time, LSA-R.S. 14:91.3(A) provided as follows:
It is unlawful for any adult to purchase on behalf of a person under the age of eighteen any alcoholic beverage either of high or low alcoholic content.
[5] The court further concluded that, even assuming that a duty was owed and that the duty was breached, the particular risk that the sixteen-year-old would grab the steering wheel of the vehicle in which he was a passenger would have been outside the scope of any duty owed. Gresham, 537 So.2d at 1147-1148.
[6] As amended by Act 1986, 1st Executive Session, No. 33, LSA-R.S. 14:91 included the following prohibition:

B. (1) It is unlawful for any person seventeen years of age to possess any alcoholic beverage either of high or low alcoholic content.