EDWIN A. LOMBARD, Judge.
|, This is a personal injury action arising out of a rear-end motor vehicle accident. The plaintiff, Charles Hammons, brought this action against Henry St. Paul, on behalf of his minor child, the rear-ending motorist, Jennifer St. Paul, and his insurer, USAA Casualty Insurance Company (“USAA Casualty”). Liability was stipulated, and a jury trial was commenced solely as to damages. For the following reasons, we affirm the jury verdict judgment.
Relevant Facts and Procedural History
On August 13, 2009, the plaintiff, Charles Hammons, was injured in an automobile accident when a vehicle driven by Jennifer St, Paul rear-ended his automobile causing him to collide into the vehicle in front of him driven by Michael Brown.
Shortly after the accident, the plaintiff began experiencing neck and back pain. On August 17, 2009, the plaintiff sought the medical attention of Dr. Leia Frickey, a specialist in general medicine and soft tissue injuries, complaining of neck and mid-back pain. During a physical examination, Dr. Frickey reported that his pain was a 3 on a scale of 1 to 5 and noted an objective finding of plus 2 spasm in the occipitalis muscle of the neck. She further observed that his spasm reversed |2the curvature of the plaintiffs spine. Dr. Frickey recommended electromyostimulation, heat, and ultrasound treatments and prescribed him Vicodin, a pain medication, and Flexeril, a muscle relaxer.
The plaintiff continued medical treatments with Dr. Frickey for approximately five months. By October 2009, the plaintiffs back pain was resolved, but his neck pain persisted with the same intensity. Dr. Frickey performed a magnetic resonance imaging (MRI) test on the plaintiff in December 2009, which revealed that he *1009 had a herniated disc. Specifically, the MRI revealed to Dr. Frickey that the plaintiff sustained a “C6-7 protrusion/su-bligamentous herniation, slightly eccentric to the left, which happen[ed] to be where he was having the pain.” Dr. Frickey also discovered that the plaintiff suffered from a diskogenic tear in his neck, which was a “pain generating source from the trauma he received in the accident.”
As Dr. Frickey advised the plaintiff that there were no formal work restrictions, recommending that the plaintiff abide by common sense restrictions and modify his duties as he felt appropriate in order to not to do anything that would agitate his condition, the plaintiff returned to work. As part of his occupation as a “working foreman,” he goes out with a construction crew and not only shows the crew how to do things, but also works alongside them which often times involves heavy construction work. At work, the plaintiff did not take the prescribed medications out of fear of endangering himself or someone else at the job, which requires working with heavy equipment and sometimes working at elevated levels.
In February 2010, the plaintiff visited Dr. Bradley Bartholomew, a neurosurgeon, as referred to by Dr. Frickey, for a disc herniation and a multiple |.-level arthropa-thy. After Dr. Bartholomew performed a physical examination, he noted that the plaintiff had tenderness on the left side of his neck and that he experienced pain when looking up. He reviewed the plaintiffs MRI and confirmed the findings of Dr. Frickey. Dr. Bartholomew also found a reversal of the normal lordotic curve of the cervical spine.
Dr. Bartholomew diagnosed the plaintiff with a facet syndrome in the neck and referred him to Drs. Zimmerman and Ap-rill for facet blocks, which are a series of injections of steroid and numbing medications designed to help with pain. The plaintiff was administered two doses of injections and both times he suffered from adverse side effects with minimal relief lasting approximately twenty-four hours.
Finding minimal relief with the facet blocks, Dr. Zimmerman performed a medial branch block on the plaintiff, only to find that it merely provided some short-term relief. In November 2010, the plaintiff underwent a rhizotomy, as suggested by Dr. Zimmerman, as a possible alternative for pain management. When the rhi-zotomy did not alleviate the pain, Dr. Zimmerman informed the plaintiff that he would have to learn to deal with the pain.
On April 1, 2010, the plaintiff filed suit in the Civil District Court for the Parish of Orleans, naming as defendants, Henry St. Paul, on behalf of his minor child, Jennifer St. Paul, and his insurer, USAA Casualty Insurance Company, alleging that as a result of the accident, he suffered injuries to his neck and back that required medical treatment.[1] USAA Casualty stipulated to liability and chose to try the case solely on the issue of damages.
|4On October 24-26, 2011, a jury trial was held on the issue of damages, during which time the defendants moved for a directed verdict on the plaintiffs claims for future lost earnings/loss of earning capacity and past lost wages. The trial court denied both motions, leaving these issues for the jury to decide.
The jury returned a verdict in favor of the plaintiff, finding that the automobile *1010 accident caused injuries to the plaintiff. The plaintiff was awarded $50,000.00 for past general damages, including mental and physical pain and suffering, $15,000.00 for future general damages, including mental and physical pain and suffering, $13,500.00 for past medical expenses, $7,500.00 for future medical expenses, $15,000.00 for past lost earnings, $59,200.00 for future lost earnings, for a total amount of $160,200.000.
On November 14, 2011, the trial court entered a judgment reflecting the jury’s verdict. The defendants subsequently filed Motions for Judgment Notwithstanding the Verdict (JNOV) on the issues of future lost earnings/loss of earning capacity and past lost wages. After a hearing, the trial court denied the motions for JNOV and this appeal followed.
On appeal, the defendants assign four errors: (1) the trial court erred in denying the defendant’s Motion for Directed Verdict and Motion for JNOV on the plaintiffs future lost earnings/loss of earning capacity claim; (2) the jury erred in awarding damages for future lost earnings/loss of earning capacity; (3) the trial court erred in denying the defendant’s Motion for Directed Verdict and Motion for JNOV on the plaintiffs claim for past lost wages; and (4) the jury erred in awarding damages for past lost wages.
Discussion

Standard of Review

IfiThe standard of review required by the trial court in ruling on both a directed verdict and a motion for JNOV is whether “after considering the evidence in the light most favorable to the party opposed to the motion, the trial court finds that it points so strongly and overwhelmingly in favor of the moving party that reasonable minds could not arrive at a contrary verdict on that issue.” Thus, a trial court may only grant a directed verdict or a JNOV when the evidence overwhelmingly points to one conclusion. Simon v. American Crescent Elevator Co., 99-2058, p. 14 (La.App. 4 Cir. 4/26/00), 767 So.2d 64, 73-4.
On appeal, the standard of review of directed verdicts is whether, viewing the evidence submitted, the appellate court concludes that reasonable people could not reach a contrary verdict under the evidence. Everhardt v. Louisiana Dept. of Transp. and Development, 07-0981, p. 13 (La.App. 4 Cir. 2/20/08), 978 So.2d 1036, 1047. When reviewing the denial of a Motion for Directed Verdict, the question to be asked by the appellate court is not whether the plaintiff proved his case by a preponderance of the evidence, but rather, upon reviewing the evidence submitted, the court could conclude that reasonable persons could not have reached a verdict in favor of the plaintiffs. Id.
The standard for review for a JNOV is a two-part inquiry. First, using the same criteria the trial court uses in deciding whether to grant JNOV, the appellate court must determine if the trial court erred. Bigelow v. Crescent Title, L.L.C., 08-0932 p. 6 (La.App. 4 Cir. 10/15/08), 997 So.2d 83, 87; citing Davis v. Wal-Mart Stores, Inc., 00-0445, p. 5 (La.11/28/00), 774 So.2d 84, 89. “The standard for granting or denying a JNOV is the same as that for a directed verdict— whether reasonable minds could differ.” Id.; citing Frank L. Maraist and Harry T. Lemmon, 1 Louisiana Civil Law Treatise, Civil Procedure § 13.4 (1999); see La Code. Civ. 1 fiProc. art. 1811. After determining that the trial court correctly applied its standard of review as to the jury verdict, the appellate court reviews the JNOV using the manifest error standard *1011 of review. Bigelow v. Crescent Title, L.L.C., 997 So.2d at 87.

Future Lost Eamings/Loss of Earning Capacity

The defendants argue in their first assignment of error that the trial court erred in denying their motions for directed verdict and JNOV on the plaintiffs future lost earnings claims, alleging that the record lacks sufficient evidence to find that the plaintiff suffers from a residual disability.
An award for loss of earning capacity requires only the presentation of “medical evidence which indicates with reasonable certainty that there exists a residual disability causally related to the accident” at issue. Aisole v. Dean, 574 So.2d 1248, 1252 (La.1991). “This medical evidence may be corroborated and complemented by lay testimony including that of the plaintiff.” Updegraff v. State ex rel. Dept. of Transp. & Dev., 01-1048, p. 15 (La.App. 4 Cir. 10/2/02) 828 So.2d 693, 704. Future lost wages awards are “inherently speculative and intrinsically insusceptible of being calculated with mathematical certainty.” Rathey v. Priority EMS, Inc., 04-0199, p. 51 (La.App. 4 Cir. 1/12/05) 894 So.2d 438, 471; citing Myers v. Burger King Corp., 92-0400, p. 14 (La.App. 4 Cir. 5/26/94), 638 So.2d 369, 379. In determining a proper future lost wage award, factors to be considered are: “the plaintiffs physical condition before the injury, the plaintiffs past work history and work consistency, the amount the plaintiff would have earned absent the injury complained of, and the probability that the plaintiff would have continued to earn wages over the remainder of his working life.” Id.
In this case, Dr. Frickey and Dr. Bartholomew testified that they treated the |7plaintiff for neck pain subsequent to the August 2009 accident. Dr. Frickey stated that while there was some degenerative change in the plaintiff’s neck, due to the fact that he had no history of treatment on his neck, the severity of the herniation and the pain it generated indicated that it was caused by the accident. Dr. Bartholomew testified that it was his professional opinion that the plaintiff is suffering from chronic pain that would likely never fully subside. He further stated that while he does not currently recommend surgery, the plaintiff may find some temporary relief with nonsurgical procedures that would have be performed on an ongoing basis, but would merely treat symptoms, and not cure him. Both doctors testified that they did not place any physical restrictions on the plaintiff, but only common sense restrictions, so as not to aggravate his injuries, which could have both long-term and short-term effects.
The plaintiff testified that he has been in the construction field for approximately twenty-seven years and currently makes $28 dollars an hour. He stated that he continued to work after the accident, but due to the chronic pain, he could no longer work as hard or as long as he had worked preceding the accident. He stated that he underwent various medical treatments to alleviate and/or reduce the pain, however, none of them provided him with long-lasting relief. The plaintiff further stated that he worked because he lives alone with no living relatives and needs the income to support himself, although he had to work through the pain to do so.
The testimony of Mr. Barney Hegwood, a vocational and rehabilitation counselor was also presented at trial. Mr. Hegwood testified that on April 26, 2011, he met with the plaintiff for an evaluation. On that date, he reviewed the plaintiffs medical records and performed an independent vocational assessment. |sHe concluded that in light of Dr. Bartholomew’s and Dr. Frickey’s medical opinions, the plaintiff *1012 will likely need corrective surgery if he intends to remain in the construction business, which is considered a “very heavy physical demand job,” requiring exerting in excess of 100 lbs. occasionally and over 50 lbs. of force frequently.
Mr. Hegwood opined that the plaintiffs work as a foreman in the construction business prevented him from taking pain medication and muscle relaxers on the job because such behavior would endanger both him and coworkers. Accordingly, Mr. Hegwood testified that the plaintiffs only option was to limit his activities and place his body at risk for a shortened career as a carpenter. Mr. Hegwood further stated that it is his opinion that the plaintiff would eventually get to a point where his body will become run down and will not be able to handle the work anymore, and thus, will have to find another means of employment.
Dr. Randy Rice, an expert in forensic economics, testified that he reviewed the plaintiffs report and, based on that information, and in comparison to statistical information, calculated the plaintiffs work-life expectancy to be about 19.43 years. Dr. Rice also calculated the per annum difference in pay the plaintiff needs to retire prematurely and seek alternative employment. He compared the plaintiffs current rate of $28.00 per hour at his present job to $10.68, the midpoint in Mr. Hegwood’s prospective wages based on his vocational assessment, and calculated that there was a $34,640.00 difference in pay, assuming a forty-hour work week.
Viewing the evidence in the light most favorable to the plaintiff, we are convinced that there is sufficient evidence to conclude that the plaintiff has proved |9a pri-ma facie case for his claim for future lost earnings. Accordingly, the case was properly before a jury and the trial court did not err in its denial of the defendants’ Motion for Directed Verdict and Motion for JNOV.
In their second assignment of error, the defendants contend that the jury erred in awarding damages for future lost earnings. Although the doctors have testified that the plaintiff has not suffered from any residual damages, the record supports the conclusion that the plaintiffs inability to perform the heavy work for as long as he would have prior to the accident shows that his ability to earn has been impaired. Thus, it is reasonable to conclude that the plaintiff could earn more money if he did not suffer from the chronic pain in his neck.
In light of the record reviewed in its entirety, we find that there is a reasonable factual basis for the jury’s findings. Accordingly, we do not find that the jury was manifestly erroneous or clearly wrong in its award of the future lost earnings to the plaintiff.

Past Lost Wages

The defendants next assert that the trial court erred in denying its Motion for Directed Verdict and Motion for JNOV on the plaintiffs claim for past lost wages. The defendants argue that the plaintiffs failure to produce payroll records or other documentary evidence that was available to him to substantiate his claim for past lost wages renders his self-serving testimony insufficient.
In regards to past lost wages, the plaintiff has the burden of proving the time missed from work as a result of the injury. Rathey v. Priority EMS, Inc., 04-0199, p. 51 (La.App. 4 Cir.1/12/05), 894 So.2d 438, 471. “Past lost wages are susceptible of mathematical calculation, and the award is not subject to the much | indiscretion standard.” Id.; citing Reichert v. Bertucci, 96-1213, p. 5 (La.App. 4 Cir. 12/4/96), 684 So.2d 1041, 1044-45.
*1013 At trial, the jury heard the plaintiff testify that before the accident, he regularly worked on Saturdays for about eight hours. However, after the accident, because of the chronic pain in his neck caused by the accident, he uses the weekends to rest.
On cross-examination, the plaintiff stated that he did not file taxes in 2008, 2009, or 2012. He further testified that he has no evidence to present to the court to show his earnings for any of those years. The jury further learned that since the accident, the plaintiffs only extended period of time that he missed work was the two-and-a-half days he had to take off because of the adverse reaction he suffered from the facet blocks treatment. The plaintiff admitted that since the accident, he has continued to work forty (40) hours per week.
The plaintiffs testimony was corroborated by the testimony of his supervisor, Mr. Kohnke. Mr. Kohnke testified that before the accident, the plaintiff would work Saturdays, which could put him in excess of around sixty to seventy hours a week at $28.00 an hour. However, after the accident, the plaintiff no longer worked the extra hours during the weekend, and thus worked about forty (40) hours per week.
A review of the record indicates that no documentary evidence was provided to support the plaintiffs claims for past lost wages. However, the plaintiff did not simply rely on his self-serving testimony, but also presented the corroborating testimony of Mr. Kohnke. Given this evidence and considering it in the light most favorable to the plaintiff, we find that reasonable minds could differ and thus, the trial court did not manifestly err in submitting this issue to the jury.
Inin their final assignment of error, the defendants assert that the jury erred in awarding the plaintiff past lost wages. However, upon a review of the entire record, we find the jury award of $15,000.00 for past lost wages is simple math supported by the testimony as provided by both Mr. Hammons and Mr. Kohnke. Accordingly, we find that the jury was reasonable in deciding the plaintiff had in fact suffered a loss in past wages and its calculation of that award was reasonable.
Conclusion
For the foregoing reasons, we find that the trial court was correct in denying the defendants’ Motion for Directed Verdict and Motion for JNOV on the issues of future lost earnings/loss of earnings and past lost wages. We further find that the jury’s awards to the plaintiff for future lost earnings/loss of earnings and past lost wages were clearly supported by a reasonable factual basis in the record. Accordingly, we affirm the trial court’s judgments.
AFFIRMED

. On August 12, 2010, Michael and Gail Brown’s action filed on May 24, 2010, entitled “Michael and Gail Brown v. USAA Casualty Insurance Company and Jennifer St. Paul ” was consolidated with this case. Since the trial, the dispute between the Browns, USAA Casualty, and the St. Pauls has been resolved.