| | | |
|---|---|---|
| RORY ANTHONY MILLER AND JESSICA EUSTIS MILLER | * | NO. 2021-CA-0136 |
| | * | |
| | | COURT OF APPEAL |
| VERSUS | * | |
| | | FOURTH CIRCUIT |
| ACADIAN AMBULANCE SERVICE OF NEW ORLEANS, L.L.C. AND XYZ INSURANCE COMPANY | * | STATE OF LOUISIANA |
| | * * * * * * * | |

APPEAL FROM
ST. BERNARD 34TH JUDICIAL DISTRICT COURT
NO. 118-888, DIVISION "B"
Honorable Jeanne Nunez Juneau, Judge
* * * * * *
**Judge Joy Cossich Lobrano**
* * * * * *

(Court composed of Judge Joy Cossich Lobrano, Judge Regina Bartholomew-Woods, Judge Paula A. Brown)


Michael C. Ginart, Jr.
Joyce D. Young
Nicholas N.S. Cusimano
John C. Ginart
LAW OFFICES OF MICHAEL C. GINART, JR. & ASSOCIATES
2114 Paris Road
Chalmette, LA 70043

      COUNSEL FOR PLAINTIFF/APPELLEE

Richard G. Duplantier, Jr.
Peter A. Bourgeois
Katherine W. Trotter
GALLOWAY JOHNSON TOMPKINS BURR & SMITH
701 Poydras Street, Suite 4040
New Orleans, LA 70139

      COUNSEL FOR DEFENDANT/APPELLANT

**JUDGMENT REGARDING COLLATERAL SOURCE AFFIRMED;
JUDGMENT NOTWITHSTANDING THE VERDICT REVERSED;
JUDGMENT IN ACCORDANCE WITH JURY VERDICT REINSTATED;
ANSWER TO APPEAL DENIED**

**FEBRUARY 4, 2022**

Defendant/appellant, Acadian Ambulance Service of New Orleans, LLC ("Acadian"), appeals the July 17, 2020 trial judgment; the July 17, 2020 judgment declaring wages pursuant to La. R.S. 33:1995 a collateral source; and the November 13, 2020 grant of judgment notwithstanding the verdict ("JNOV") rendered in favor of plaintiffs/appellees, Rory and Jessica Miller (the "Millers"). For the reasons that follow, we reverse the judgment granting JNOV, reinstate the jury verdict, affirm the judgment regarding the collateral source rule, and deny the answer to appeal.

## FACTS AND PROCEDURAL HISTORY

This matter stems from a March 7, 2011 work-related accident. Rory Miller is a Captain in the St. Bernard Parish Fire Department ("SBFD''), as well as a certified emergency medical technician ("EMT") – paramedic. He and his assigned engineer, Rebecca Stechmann ("Stechmann"), along with their supervisor, District Chief Ricky Weiskopf ("Weiskopf"), responded to a call relative to an obese patient with a back injury. At the scene, Rory Miller injured his right shoulder

while he, Stechmann, and Weiskopf assisted two Acadian paramedics transport the patient on a spine board. On March 6, 2012, the Millers filed a petition for damages alleging that Acadian breached the standard of care by failing to have sufficient equipment to transport an obese patient. Specifically, the Millers claimed that the spine board was inadequate to support the patient's weight such that it flexed while the patient was lifted, an Acadian paramedic lost his grip on the spine board, and Rory Miller was required to bear more weight to hold the spine board steady, thereby injuring his right shoulder.

On December 4, 2015, Acadian filed a motion for summary judgment, arguing that the professional rescuer's doctrine, also referred to as the "fireman's rule," bars the Millers' recovery for their claims.[1] On August 3, 2016, the district court denied summary judgment, and thereafter, following an application in this Court, on October 12, 2016, supervisory writs were denied.

On February 11, 2020, the case proceeded to a three-day jury trial. On February 13, 2020, in open court, the district court denied Acadian's motion for directed verdict and granted the Millers' motion for directed verdict, ruling that the professional rescuer's doctrine did not apply to the Millers' claims. The jury rendered its verdict on February 14, 2020, finding Rory Miller and Acadian equally at fault. The jury awarded $485,000 in damages to Rory Miller and $45,000 to Jessica Miller, which were reduced by 50% for comparative fault for

---

[1] The professional rescuer's doctrine is "a jurisprudential rule that provides that professional rescuers, such as firemen and policemen, assume the risk of injuries incurred in the performance of their duties and are not entitled to damages." *Davis v. Burke's Outlet Stores, LLC*, 14-686, p. 8 (La. App. 3 Cir. 12/10/14), 155 So.3d 664, 670 (citation omitted).

resulting awards of $242,500.00 and $22,500.00, respectively.[2] On July 17, 2020, the district court rendered judgment memorializing the jury verdict. The judgment reflected the parties' stipulation at trial that Rory Miller's employer, St. Bernard Parish (the "Parish"), paid workers' compensation benefits in the amount of $74,094.51 in medical expenses and $19,355.14 in indemnity expenses for a total of $93,449.65, which was reduced for Rory Miller's comparative negligence to $46,724.83, plus judicial interest and costs.

The Millers filed multiple post-trial motions. The district court granted in part the Millers' motion for JNOV on comparative fault, finding Rory Miller 30% at fault and Acadian 70% at fault, and further awarded Rory Miller an additional $50,000 for future mental anguish. The district court also granted the Millers' motion to have fireman's sick pay declared a collateral source.

Acadian brought a suspensive appeal, raising the following assignments of error:

1. The trial court erred in denying Defendant's Motion for Directed Verdict for the Application of Professional Rescuer Doctrine and granting Plaintiffs' Motion for Directed Verdict.

---

[2] The damages, before reduced for comparative fault, were awarded as follows:

| | |
|---|---|
| A. Past Medical Expenses | $75,000.00 |
| B. Future Medical Expenses | $75,000.00 |
| C. Past Physical Pain and Suffering | $75,000.00 |
| D. Future Pain and Suffering | $75,000.00 |
| E. Past Mental Anguish and Anxiety | $50,000.00 |
| F. Future Mental Anguish and Anxiety | $0 |
| G. Past Loss of Enjoyment of Life | $15,000.00 |
| F. Future Loss of Enjoyment of Life | $15,000.00 |
| I. Past Lost Wages and/or Earning Capacity | $60,000.00 |
| J. Future Lost Wages and/or Earning Capacity | $45,000.00 |
| K. Total Award | $485,000.00 |

2. The trial court erred in granting Plaintiffs' Motion to Declare Wages Paid Fireman Pursuant to La. R.S. 33:1995 Et. Seq., A Collateral Source and As Such is Properly Owed by Defendant to Plaintiff, Mr. Miller.

3. The trial court erred in granting Plaintiffs' Judgment Notwithstanding the Verdict ("JNOV").

4. The jury's verdict determining that the Defendant was negligent was in error.

Miller answered the appeal, wherein he contended:

[T]he Judgment is in error in (1) the inadequate amount of damages awarded plaintiff; (2) the percentage of fault assigned to plaintiff; and (3) in any other manner to be addressed in plaintiffs/appellees brief or at the hearing of this matter.

## DISCUSSION

**Professional Rescuer's Doctrine**

We first address whether the district court erroneously granted the Millers' motion for directed verdict and denied Acadian's motion for directed verdict. This issue requires our Court to examine whether the professional rescuer's doctrine applies and bars the Millers' claims.

"In a jury trial, a party may move for directed verdict at the close of an opponent's evidence." *Johnson v. Transit Mgmt. of Se. Louisiana, Inc.*, 17-0793, p. 6 (La. App. 4 Cir. 2/28/18), 239 So.3d 973, 978 (citing La. C.C.P. art. 1810). "The motion for directed verdict is a procedural device available in a jury trial to promote judicial economy." *Id.* (citations omitted). "Thus, the motion is appropriately made when the evidence overwhelmingly points to one conclusion." *Id.* "On appeal, the standard of review of directed verdicts is whether, viewing the evidence submitted, the appellate court concludes that reasonable people could not

4

reach a contrary verdict under the evidence." *Hammons v. St. Paul*, 12-0346, p. 5 (La. App. 4 Cir. 9/26/12), 101 So.3d 1006, 1010 (citation omitted). When the appellate court reviews the grant or denial of a motion for directed verdict, the question "is not whether the plaintiff proved his case by a preponderance of the evidence, but rather, upon reviewing the evidence submitted, [whether] the court could conclude that reasonable persons could not have reached a verdict in favor of the plaintiffs." *Id.*

In *Meunier v. Pizzo,* 97-0047, pp. 4-5 (La. App. 4 Cir. 6/18/97), 696 So.2d 610, 613, this Court recognized, under this doctrine, that the professional rescuer injured while performing professional duties assumes the risk of such injury, with two exceptions:

> The Professional Rescuer's Doctrine provides that a professional rescuer injured in the performance of his or her professional duties assumes the risk of such injury and is not entitled to damages from a third party. While this doctrine, arising out of an assumption of risk rationale, is the general rule, Louisiana courts have recognized two exceptions. First, a professional rescuer may recover for injuries caused by the defendant's gross or wanton negligence. Second, a professional rescuer may recover for injuries caused by a risk independent of the emergency or problem the professional rescuer assumed the duty to remedy. *Spicuzza v. Fonseca*, 537 So.2d 272 (La. App. 4 Cir. 1988); *Chinigo v. Geismar Marine, Inc.*, 512 So.2d 487, 490 (La. App. 1 Cir. 1987), *writ denied*, 514 So.2d 457 (La. 1987) (citing *Langlois v. Allied Chemical Corp.*, 258 La. 1067, 249 So.2d 133 (1971)).

Most of the jurisprudence applying the professional rescuer's doctrine involves a professional rescuer seeking recovery against the person who created the emergency or who required rescuing. *See, e.g.*, *Meunier, supra*; *Spicuzza,*

*supra*; *Davis v. Burke's Outlet Stores, LLC*, 14-686 (La. App. 3 Cir. 12/10/14), 155 So.3d 664; *Mullins v. State Farm Fire & Cas. Co.*, 96-0629 (La. App. 1 Cir. 6/27/97), 697 So.2d 750; *Bourgeois v. Duplessis*, 540 So.2d 397 (La. App. 1st Cir. 1989); *Solis v. Civic Ctr. Site Dev. Co.*, 385 So.2d 1229 (La. App. 4th Cir. 1980). However, Acadian argues that the doctrine is also applicable to a fellow professional rescuer, relying on *Thomas v. City of Bastrop*, unpub., No. CV 08-1066, 2010 WL 1230160 (W.D. La. March 29, 2010), wherein a paramedic armed himself with a pistol and entered the scene of a police standoff with an armed gunman. Nevertheless, *Thomas* is an unreported federal district court case, and we are not bound by its holding.

Rather, this Court recognized the public policy behind the professional rescuer's doctrine in *Meunier*, 97-0047, pp. 8-9, 696 So.2d at 614-15:

> Finally, there is a strong policy reason for failing to find a special duty owing to professional rescuers. If such a duty were recognized by the courts, proprietors would be reluctant to summon police to their premises when needed because of fear of liability resulting from injury to the officers by third parties. If police officers were allowed to recover in such situations, proprietors might choose to resort to self-help measures instead, creating additional risks to public safety.

This Court likewise expressed this public policy in *Solis*, 385 So.2d at 1232:

> Our consideration of the issue presented in this case compels a holding that a proprietor with a duty of care for the lives, safety and property of those on his premises should not be discouraged from calling for aid from police or firemen because of fear of liability resulting from injury to them by third parties.

Another court further explained this rationale, stating that the doctrine:

6

> … is considered in determining the risks included within the scope of a defendant's duty and to whom the duty is owed. A defendant's ordinary negligence or breach of duty does not encompass the risk of injury to a fireman responding in the line of duty to a situation created by such negligence. Thus, the fireman's rule generally arises in claims by rescuers against the person who was responsible for starting the fire itself or prompting the need for rescue.

*Holloway v. Midland Risk Ins. Co.*, 36,262, p. 4 (La. App. 2 Cir. 10/30/02), 832 So.2d 1004, 1009 (internal citation omitted) (upholding products liability claim against manufacturer and finding doctrine inapplicable to manufacturer). Relying on *Holloway*, the Millers argue that the professional rescuer's doctrine does not apply where a claim is brought against a party who did not create the emergency to which the rescuer is responding.

The Millers, however, seek recovery from a fellow rescuer, Acadian, not from the person who created the emergency or who required rescuing. We find that the professional rescuer's doctrine does not apply to claims of negligence between professional rescuers. Examining the particular public policy implicated by this jurisprudential doctrine, we do not find that said policy is furthered by barring an injured firefighter's claims of negligence against third party paramedics. Indeed, Acadian submits that a form of tort immunity between rescuers would promote a different aim, interagency cooperation. To the extent that tort immunity could further interagency cooperation, "[i]t is not our function as a court of appeal to legislate." *New Orleans Fire Fighters Pension & Relief Fund v. City of New Orleans*, 13-0873, p. 10 (La. App. 4 Cir. 12/18/13), 131 So.3d 412, 419 (quotation omitted). We decline to extend the professional rescuer's doctrine to the facts of

7

this case, particularly where no other Louisiana court has done so. We thus find no error in the district court's ruling.

**Fireman's Sick Leave Pay as Collateral Source**

We next turn to whether the district court erred in finding fireman's sick leave benefits paid to Rory Miller, pursuant to La. R.S. 33:1995, is a collateral source. No reported case has addressed this issue. The parties raised the dispute during trial and agreed to submit post-trial briefing.

Following his injury, Rory Miller received both fireman's sick leave and Louisiana workers' compensation benefits. On March 7, 2014, the Parish, in its capacity as Rory Miller's employer, filed a petition of intervention, pursuant to La. R.S. 23:1101 *et seq.*, seeking to recover workers' compensation benefits paid on Rory Miller's behalf.[3] At the time of trial, those benefits totaled $93,449.65,

_____

[3] La. R.S. 23:1101 provides:

> A. When an injury or compensable sickness or disease for which compensation is payable under this Chapter has occurred under circumstances creating in some person (in this Section referred to as "third person") other than those persons against whom the said employee's rights and remedies are limited in R.S. 23:1032, a legal liability to pay damages in respect thereto, the aforesaid employee or his dependents may claim compensation under this Chapter and the payment or award of compensation hereunder shall not affect the claim or right of action of the said employee or his dependents, relations, or personal representatives against such third person, nor be regarded as establishing a measure of damages for the claim; and such employee or his dependents, relations, or personal representatives may obtain damages from or proceed at law against such third person to recover damages for the injury, or compensable sickness or disease.
>
> B. Any person having paid or having become obligated to pay compensation under the provisions of this Chapter may bring suit in district court against such third person to recover any amount which he has paid or becomes obligated to pay as compensation to such employee or his dependents. The recovery allowed herein shall be identical in percentage to the recovery of the employee or his dependents against the third person, and where the recovery of

8

comprised of $74,094.51 in medical expenses and $19,355.14 in indemnity expenses, to which the parties stipulated at trial. In the July 17, 2020 judgment following trial, St. Bernard Parish was awarded $46,724.83 (representing a 50% reduction for comparative fault) plus judicial interest and costs.

Additionally, the Parish paid Rory Miller fireman's sick leave benefits, though the record does not reflect the precise amount. Rory Miller testified that at the time of his accident his annual salary was approximately $50,000. The jury awarded Miller $60,000 in past lost wages/earning capacity and $45,000 in future lost/wages earning capacity, which were reduced by half under comparative negligence. On April 14, 2020, the Millers filed a motion to have fireman's sick leave benefits declared a collateral source, which the district court granted. The district court's ruling did not result in any additional sum awarded to the Millers, and the jury award against Acadian for lost wages was not reduced to account for the sick leave benefits Rory Miller received.

The collateral source rule is a "rule of evidence and damages" under which "an injured plaintiff's tort recovery may not be reduced, because of monies received by the plaintiff from sources independent of the tortfeasor's procuration or contribution." *Bozeman v. State*, 03-1016, pp. 8-9 (La. 7/2/04), 879 So.2d 692, 697-98. Payments the plaintiff receives from this collateral source "are not

---

the employee is decreased as a result of comparative negligence, the recovery of the person who has paid compensation or has become obligated to pay compensation shall be reduced by the same percentage. The amount of any credit due the employer may be set in the judgment of the district court if agreed to by the parties; otherwise, it will be determined pursuant to the provisions of R.S. 23:1102(A)….

deducted from the award the aggrieved party would otherwise receive from the wrongdoer, and, a tortfeasor's liability to an injured plaintiff should be the same, regardless of whether or not the plaintiff had the foresight to obtain insurance" and other benefits. *Id.*, 03-1016, p. 9, 879 So.2d at 698.

Fireman's sick leave is a statutory benefit provided in La. R.S. 33:1995, which provides:

> Every fireman in the employ of a municipality, parish or fire protection district to which this Sub-part applies, shall be entitled to full pay during sickness or incapacity not brought about by his own negligence or culpable indiscretion for a period of not less than fifty-two weeks.

This statutory scheme provides the injured fireman's municipal employer a credit for the amount of workers' compensation benefits said fireman received, as follows:

> A fireman employed by any municipality, parish or fire protection district who draws full pay during sickness or incapacity shall have such pay decreased by the amount of workers' compensation benefits actually received by the employee.

La. R.S. 33:1995.1.

*Romagosa v. Lafayette City-Par. Consol. Gov't*, 01-1600, p. 8 (La. App. 3 Cir. 5/29/02), 824 So.2d 448, 453 explained that these statutes:

> …give[] the municipality which chooses to pay workers' compensation benefits to an injured employee the right to a credit for such benefits against the sick pay benefits that it owes to the employee in any event. *Ray v. City of New Orleans*, 284 So.2d 83 (La. App. 4 Cir.), *writ denied*, 286 So.2d 661 (La. 1973). If an injured fireman qualifies by sickness or disability, he may be entitled to both with the statutory credit; if he does not qualify for either, he is entitled to neither.

Unlike workers' compensation, these statutes do not provide the municipality a right of subrogation to recover its sick leave payments from the proceeds of the fireman's tort suit against a third person.

Recent personal injury cases in other circuits have applied the collateral source rule to workers' compensation benefits and to wages paid in lieu of compensation. *See, e.g., Royer v. State Dep't of Transportation & Dev.*, 16-534, p. 17 (La. App. 3 Cir. 1/11/17), 210 So.3d 910, 922; *Villa v. GEICO Cas. Ins. Co.*, 17-608, pp. 12-13 (La. App. 3 Cir. 2/15/18), 239 So.3d 346, 354-55.

Acadian relies, however, on cases finding that the collateral source rule does not apply to "written off" amounts of medical expenses and attorney-negotiated medical discounts. *See, e.g., Bozeman*, 03-1016, p. 22, 879 So.2d at 705; *Hoffman v. 21st Century N. Am. Ins. Co.*, 14-2279, p. 7 (La. 10/2/15), 209 So.3d 702, 706. Acadian also argues that Rory Miller was a co-tortfeasor, which it suggests should weigh against allowing him a double recovery.

We find this case most similar to *Villa* and are persuaded by its analysis:

> More recently, in *Royer v. State Dep't of Transp. & Dev.*, 210 So.3d at 910, this court, in addressing whether the collateral source rule applied to the payment of workers' compensation benefits from an employer to an employee for damages sustained in a vehicle accident caused by the Louisiana Department of Transportation and Development, held:
>
>> If the primary goal of the collateral source rule is tort deterrence, the collateral source rule applies to a tortfeasor, even if consideration, in the form of policy payments, is non-existent, as will always be the case when a workers' compensation carrier is the collateral source. We find that

11

the overriding policy of tort deterrence outweighs the concern of double recovery.

We first observe that Ms. Villa did not receive a "windfall," as she earned the ability to take off work and receive compensation for time off due to her long-time employment with Elmer's. As testified to by Ms. Elmer, this was a benefit provided to all employees when it was needed but it was not an indefinite benefit.

Furthermore, even if we were to consider that Ms. Villa did not earn the ability to take off time with compensation, we agree with the court's reasoning in *Lee v. Cook*, 482 So.2d 760, 763 (La. App. 5 Cir.), writ denied, 484 So.2d 137 (La. 1986) (citing *Wallace v. Pan American Fire & Cas. Co.*, 352 So.2d 1048 (La. App. 3 Cir. 1977) ):

> [U]nder the collateral source rule in an action in tort by an injured employee against a third-party tort-feasor, where the tort-feasor is established and the employer does not intervene for reimbursement of compensation benefits paid, the plaintiff is entitled to recover the full amount of damages sustained by him without deduction of the amounts he has received from his employer as compensation benefits.

Elmer's Radiator Shop made no claim for reimbursement of wages paid to Ms. Villa when she was off work due to the accident.

For these reasons, we find that the trial court was correct in applying the collateral source rule. Ms. Villa is entitled to recover damages for past loss [of] wages.

*Villa*, 17-608, pp. 12-13 (La. App. 3 Cir. 2/15/18), 239 So.3d 346, 354-55.

While the Parish intervened to recover the workers' compensation benefits it paid, it did not do so with respect to the fireman's sick leave pay. Moreover, Rory Miller was found comparatively negligent, and the lost wages awarded by the jury against Acadian were reduced in the district court's judgment by his percentage of

fault for his accident. Like the Third Circuit in *Villa*, we find that the district court

properly applied the collateral source rule, and this assignment lacks merit.

**Judgment Not Withstanding the Verdict; Negligence**

We examine together Acadian's third and fourth assignments of error.

Acadian contends that the district court erred in granting JNOV, reducing Rory

Miller's allocation of fault from 50% (as found by the jury) to 30% and awarding

an additional $50,000 in damages for future mental anguish and anxiety. Acadian

also argues that the jury erred in finding Acadian negligent.

Louisiana Code of Civil Procedure art. 1811(F) provides that a motion for

JNOV may be granted on the issue of liability, on the issue of damages, or both. In

*Hammons*, 12-0346, pp. 5-6, 101 So.3d at 1010-11, this Court set forth the two-

part inquiry that appellate courts use when reviewing the district court's

determination to grant or deny a JNOV:

> First, using the same criteria the trial court uses in deciding whether to grant JNOV, the appellate court must determine if the trial court erred. *Bigelow v. Crescent Title, L.L.C.*, 08-0932 p. 6 (La. App. 4 Cir. 10/15/08), 997 So.2d 83, 87; citing *Davis v. Wal-Mart Stores, Inc.*, 00-0445, p. 5 (La. 11/28/00), 774 So.2d 84, 89. "The standard for granting or denying a JNOV is the same as that for a directed verdict—whether reasonable minds could differ." *Id.*; citing Frank L. Maraist and Harry T. Lemmon, *1 Louisiana Civil Law Treatise, Civil Procedure* § 13.4 (1999); *see* La Code. Civ. Proc. art. 1811. After determining that the trial court correctly applied its standard of review as to the jury verdict, the appellate court reviews the JNOV using the manifest error standard of review. *Bigelow v. Crescent Title, L.L.C.*, 997 So.2d at 87.

"The law provides we must give great deference to the allocation of fault as determined by the trier of fact." *Fontenot v. Patterson Ins.*, 09-0669, p. 22 (La. 10/20/09), 23 So.3d 259, 274 (citing *Clement v. Frey*, 95-1119, 95-1163, p. 7 (La. 1/16/96), 666 So.2d 607, 610). "[T]he allocation of fault is not an exact science, or the search for one precise ratio, but rather an acceptable range, and that any allocation by the factfinder within that range cannot be clearly wrong." *Fontenot*, 09-0669, p. 22, 23 So.3d at 274 (citing *Foley v. Entergy La., Inc.*, 06-0983, p. 32 (La. 11/29/06), 946 So.2d 144, 166). The Louisiana Supreme Court "identified various factors which may influence the degree of fault assigned, including: whether the conduct resulted from inadvertence or involved awareness of the danger, how great a risk was created by the conduct, the significance of what was sought by the conduct, the capacities of the actors, whether superior or inferior, and any extenuating circumstances which might require the actor to proceed in haste, without proper thought." *Joseph v. Broussard Rice Mill, Inc.*, 00-0628, p. 13 (La. 10/30/00), 772 So.2d 94, 103 (citing *Watson v. State Farm Fire & Cas. Ins. Co.*, 469 So.2d 967, 974 (La. 1985).

At trial, the following evidence was presented to the jury. At the time of the accident, Rory Miller held (and continued to hold as of the trial) the rank of captain in the SBFD. He obtained an EMT-basic certification in 1990, then obtained an EMT-paramedic certification in 1995, and has undergone first responder recertification every two years. In 2001, ten years before the right shoulder injury

14

in litigation, he injured his left shoulder assisting an EMT lift an obese patient, thereafter underwent surgery, and ultimately returned to full duty work.

Rory Miller and Stechmann both testified to the typical procedure when SBFD is dispatched to medical calls along with an ambulance. Because firefighters are stationed locally, firefighters will typically arrive before the ambulance. The firefighters will have access to first aid supplies and limited medical equipment, and will take a patient's history, administer first aid, and seek to make the patient more comfortable. When ambulance personnel arrive, they will take over medical care and firefighters will remain at the scene, follow ambulance personnel's lead, and provide assistance when requested.

On the date of the accident, Miller and Stechmann arrived in an SBFD vehicle and Weiskopf arrived in a separate vehicle a few minutes later. Before arriving, they were made aware of the patient's large size. The patient was lying on a mattress on the floor. When Acadian personnel arrived, Miller spoke with one paramedic about what equipment was available to move the patient, and Acadian provided a spine board. The five responders at the scene – Rory Miller, Stechmann, Weiskopf, and the two Acadian EMTs – stood on the mattress to lift the patient on the spine board. According to Rory Miller and Stechmann, the patient's body extended beyond the sides of the spine board such that they were holding the spine board beneath the patient.

After his 2011 injury, Rory Miller worked on light duty, underwent surgery, and returned to full duty work after 15 months. Between the injury and the time of

trial, he had worked for 8 years at full duty as a firefighter. He testified that he intended to work another 3.5 years then retire. As of trial, he complained that he still has some pain and limited motion. He testified that it "hurts" that, because of his injury, he cannot partake in sports activities with his youngest child as much as he would like, particularly coaching softball. He is able to attend her games, but cannot coach due to the pain he experiences while playing. His wife, Jessica Miller, testified that since the injury he does not play golf or hunt.

Rory Miller testified that there is no specific SBFD rule that requires that firefighters stay and assist once an ambulance arrives. However, he does assist EMTs any time they ask for assistance, in an effort to be helpful to the patient. He agreed that lifting is part of the risks of being a firefighter. Rory Miller equivocated in his testimony on whether it is his job as a firefighter to help ambulance personnel with lifting and loading a patient. He stated, however, that he has the same training as the other paramedics working for Acadian. He testified that, at the scene, he asked for a secondary ambulance unit and one was not available. He admitted that he could have voiced complaints about the method of lifting the patient from the mattress, but he did not, stating that he was following Acadian's lead. He believed that if the ambulance had a ManSAC, a wider lifting device with many handles, he would not have been injured, because the firefighters and EMTs would have been able to more effectively use the handles while lifting.

The Millers called an expert witness, Gary Ludwig, a fire chief. He testified that, generally, any patient in excess of 300 pounds is a bariatric patient. Ludwig

testified that bariatric ambulances were not the standard of care in 2011, but were available, and Acadian was using them in Texas. In Memphis, where Ludwig was working at that time, bariatric ambulances were used along with ManSACs, which could be used to move a heavy patient. He explained that the ManSAC "equally distributed the weight to all the different points so that you could use it with multiple people so that not one individual is specifically trying to lift the patient in an awkward way." Ludwig testified that a ManSAC costs approximately $300. He also testified about other devices available on the market, including larger and wider spine boards and pillow-like devices for patient transportation. Ludwig testified that he reviewed Acadian's internal policies dated 2009, which did not contain any bariatric equipment requirements.

Ludwig testified that a regular spine board was not the proper transfer device for this patient. He also testified that the national standard limit for lifting is 50 pounds, such that there should have been two to four more people to lift the patient. Ludwig acknowledged, however, that no Louisiana requirement existed requiring Acadian to have a bariatric ambulance, ManSAC, or specialized bariatric equipment. Still, in Ludwig's opinion, not having such equipment is a breach of the standard of care described in the Paramedic National Standard Curriculum, published by the United States Department of Transportation, National Highway Safety Administration. Nevertheless, he conceded that these are training materials and that Louisiana follows that curriculum. When asked by counsel to point to a specific regulation, he stated that the Department of Transportation and National

17

Highway Traffic System Safety Administration requires state EMS offices to adhere to their standards for the testing of paramedics.

Ludwig opined that, once the ambulance arrived, patient care was transferred to the ambulance personnel, who were then in charge of the scene, and Miller and his supervisor no longer had any fault or responsibility. Even so, he agreed that if the firefighters saw something unsafe, they could have objected and asked for more personnel. Ludwig acknowledged that Rory Miller and Weiskopf could have asked for more Acadian personnel, additional fire department units, or more equipment.

Acadian called its safety manager, Neil Davis, to testify about Acadian's lifting protocol. He testified that, according to Acadian's safety manual, lifting protocol is 150 pounds per person and 300 pounds per two-person crew. Thus, Acadian would require four people to lift a 500-pound person. Davis testified that, under the 2011 policy, use of a long spine board was the appropriate device to move a patient, and its use was correct for the patient herein. He was unable to testify as to the weight rating for the spine board in dispute.

The two Acadian EMTs did not testify and were not named as defendants individually. Likewise, Weiskopf did not testify.

In granting the JNOV, the district court increased the allocation of fault against Acadian from 50% to 70% and decreased Rory Miller's allocation of fault from 50% to 30%. According to the district court's judgment and oral reasons, she perceived that the jury erred in ignoring the relative capacities of the parties,

specifically, Rory Miller's and Stechmann's testimony that Acadian personnel were in a superior position, controlling and directing patient care. Nevertheless, the threshold question on our appellate review is whether reasonable minds could differ. As this Supreme Court explained in *Davis*, 00-0445, p. 4, 774 So.2d at 89 (quotation omitted):

> The motion should be granted only when the evidence points so strongly in favor of the moving party that reasonable men could not reach different conclusions, not merely when there is a preponderance of evidence for the mover. If there is evidence opposed to the motion which is of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions, the motion should be denied. In making this determination, the court should not evaluate the credibility of the witnesses and all reasonable inferences or factual questions should be resolved in favor of the non-moving party.

While it was uncontested that Acadian personnel would lead patient care on their arrival, Rory Miller had been a certified paramedic for more than 15 years at the time of this accident and had the same training as the Acadian paramedics. The jury also heard Rory Miller's testimony that he had injured his opposite shoulder 10 years earlier in a similar type of accident while assisting EMTs to lift an obese patient. They further heard him concede that he could have voiced complaints about the manner of lifting and moving the patient from the mattress, but he did not. The Millers' expert likewise testified that Miller could have requested additional firefighters or equipment to assist with lifting.

In light of the evidence before us, we find that reasonable minds could differ on the allocation of fault between Rory Miller and Acadian, and the record

furnishes a reasonable factual basis for the jury's finding that Rory Miller and Acadian were equally at fault for Rory Miller's injury.

Concerning damages for future mental anguish and anxiety, the jury heard testimony that Rory Miller has been working at full duty as a firefighter for the past eight years, despite some lingering pain and decreased shoulder mobility. The record contains limited evidence of Rory Miller's mental state. He testified to his regret that he cannot not play softball with his younger daughter or coach her team, as he had done with his older daughter. The jury awarded Rory Miller $75,000 in future physical pain and suffering and $15,000 for loss of enjoyment of life,[4] while awarding no damages for future mental anguish and anxiety. On this issue, we find that reasonable minds could differ as to the quantum of future mental anguish damages, and on the basis of the minimal mental state evidence, a jury could have reasonably inferred that Rory Miller will sustain no compensable future mental injury.

---

[4] "[T]he assessment of quantum, or the appropriate amount of damages, by the trial judge or jury is a determination of fact, one entitled to great deference on review." *McMaster v. Progressive Sec. Ins. Co.*, 14-0155, p. 5 (La. App. 4 Cir. 10/29/14), 152 So.3d 979, 983 (citation omitted). "The jury has the latitude to choose between witnesses, including expert witnesses, and to use such expert testimony together with its own common sense and experience to arrive at its conclusions of fact." *Id.*, 14-0155, pp. 5-6, 152 So.3d at 983. The Millers cite *Wainwright v. Fontenot*, 00-0492 (La. 10/17/00), 774 So.2d 70, to support their argument that the jury's failure to award damages for future mental anguish and anxiety resulted in an inconsistent verdict. We find *Wainwright* distinguishable because future physical pain and suffering and loss of enjoyment of life, which the jury awarded, are general damages. *See McGee v. A C And S, Inc.*, 05-1036, pp. 4-5 (La. 7/10/06), 933 So.2d 770, 774-75. Moreover, the Louisiana Supreme Court concluded in *Wainwright* that "a verdict awarding medical expenses yet denying general damages is not *per se* invalid." 00-0492, p. 9, 774 So.2d at 76. Rather, in certain cases, "a jury, in the exercise of its discretion as a factfinder, can reasonably reach the conclusion that a plaintiff has proven his entitlement to recovery of certain medical costs, yet failed to prove that he endured compensable pain and suffering as a result of the defendant's fault." *Id.*, 00-0492, p. 8, 774 So.2d at 76. The Supreme Court explained that an appellate court reviewing a verdict that awards special damages but no general damages "must ask whether the jury's determination that plaintiff is entitled to certain medical expenses but not to general damages is so inconsistent as to constitute an abuse of discretion." *Id.*

Thus, we find that that the jury's assessment of fault and damages for future mental anguish and anxiety was reasonably supported by the evidence in this case. The district court erred in granting the JNOV and disturbing the jury's findings of fact where reasonable jurors may have reached different conclusions on the evidence of record. We reverse the district court's grant of the JNOV, and we reinstate the jury verdict as set forth in the trial judgment dated July 17, 2020.

Acadian argues lastly that the jury erred in finding any negligence by Acadian.[5] We disagree, as we find the record contains a reasonable factual basis for the jury's finding that Acadian was negligent. The Millers' expert, Ludwig, testified that the spine board that Acadian furnished to transport the patient was inadequate and that two to four additional individuals should have participated in lifting the patient. The jury could have reasonably credited this expert testimony, while recognizing that that Louisiana requirements for ambulance certification in 2011 did not require batriatric ambulances or ManSACs. We find this assignment without merit.

---

[5] Negligence is examined under a duty-risk analysis. *See Lemann v. Essen Lane Daiquiris, Inc.*, 05-1095, p. 7 (La. 3/10/06), 923 So.2d 627, 632-33. Under a duty-risk analysis, the plaintiff has the burden of proving five elements: "(1) the defendant had a duty to conform his conduct to a specific standard (the duty element); (2) the defendant's conduct failed to conform to the appropriate standard (the breach element); (3) the defendant's substandard conduct was a cause in fact of the plaintiff's injuries (the cause-in-fact element); (4) the defendant's substandard conduct was a legal cause of the plaintiff's injuries (the scope of liability or scope of protection element); and (5) the actual damages (the damages element)." *Id.*, 05-1095, p. 7, 923 So.2d at 633. An appellate court reviews a jury's findings of fact under the "manifest error" or "clearly wrong" standard of review, meaning that a court of appeal may not set aside a jury's findings of fact in the absence of "manifest error" or unless it is "clearly wrong." *Fountain v. Ochsner Clinic Found. Westbank Campus*, 15-1048, p. 10 (La. App. 4 Cir. 5/11/16), 194 So.3d 728, 735 (citing *Rosell v. ESCO*, 549 So.2d 840, 844 (La. 1989)). "[I]n order to reverse a jury's determination, an appellate court must find that a reasonable factual basis does not exist for the jury's findings and, further, that the findings are clearly wrong." *Id.* (citations omitted). "Consequently, the issue to be resolved by a reviewing court is not whether the trier-of-fact was right or wrong, but whether the fact finder's conclusion was a reasonable one." *Id.*, 15-1048, pp. 10-11, 194 So.3d at 735-36 (citations omitted).

**Answer to Appeal**

In its answer to appeal, the Millers argue that: (1) 100% liability should be allocated to Acadian; (2) damages were inadequate; and (3) the district court erred in "any other manner to be addressed in plaintiffs/appellees brief or at the hearing of this matter." Only the first of these arguments is briefed, and as such, the remaining arguments are deemed abandoned.[6]

With respect to allocation of fault, we address the issue above in this opinion, and consequently, the answer to appeal is denied.

## CONCLUSION

Accordingly, for the reasons set forth herein, we reverse the district court's grant of judgment notwithstanding the verdict, we reinstate the trial judgment memorializing the jury verdict, we affirm the judgment declaring fireman's wages a collateral source, and we deny the answer to appeal.

**JUDGMENT REGARDING COLLATERAL SOURCE AFFIRMED;
JUDGMENT NOTWITHSTANDING THE VERDICT REVERSED;
JUDGMENT IN ACCORDANCE WITH JURY VERDICT REINSTATED;
ANSWER TO APPEAL DENIED**

---

[6] *See St. Germain v. St. Germain*, 20-0146, p. 1 n. 1 (La. App. 4 Cir. 3/17/21), 315 So.3d 443, 445. "The court may consider as abandoned any assignment of error or issue for review which has not been briefed." Uniform Rules—Courts of Appeal, Rule 2–12.4(B)(4)(held unenforceable, in part, on other grounds, in *Clark v. Dep't of Police*, 12-1274, p. 7 (La. App. 4 Cir. 2/20/13), 155 So.3d 531, 536).